## Hardy *versus* Sprowle.

A person, related to another by affinity in the fourth degree, according to the rules of the civil law, cannot act as juror in a suit, to which such other person is a party, except by consent.

Though at the empannelment, no objection was made to such a relative, and he was therefore permitted to act as a juror, yet, if it appear that such affinity was not known to the party moving to set aside the verdict, till after it had been rendered, it must be set aside.

TRESPASS. The verdict was for the defendant, and the plaintiff moves to set it aside : —

1. Because rendered against the weight of evidence.

2. Because one of the jurors, who tried the cause and rendered the verdict, was a first cousin to the defendant's wife, which affinity was not known to the plaintiff, until after the rendition of the verdict.

HOWARD, J. — The motion to set aside the verdict, as against evidence, is not supported by a statement of the whole evidence, prepared in conformity with the statute requirements, or the rules of court, and must be dismissed. But the

motion affecting the competency of a juror, is properly before us, and will be considered.

It is highly important that jurors should be disinterested and indifferent, in all causes in which they are called upon to deliberate and decide. Facts and circumstances which are regarded as affecting their impartiality unfavorably, and disqualifying them from sitting in particular cases, have been indicated by statute provisions. "The court, on motion of either party in a suit, may examine, on oath, any person called as a juror therein, whether he be related to either party, or has given or formed any opinion, or is sensible of any bias, prejudice, or particular interest in the cause ; and if it shall appear from his answers, or from any competent evidence, introduced by the party objecting to the juror, that he does not stand indifferent in the cause, another juror shall be called, and placed in his stead for the trial of the cause." R. S. chap. 115, sect. 65.

"When a person is required to be disinterested or indifferent in acting upon any question, in which other parties are interested, any relationship in either of said parties, either by consanguinity or affinity, within the sixth degree, inclusive, according to the rules of the civil law, or within the degree of second cousin, inclusive, shall be construed to disqualify such person from acting on such question, unless by the express consent of the parties interested therein." Chap. 1, sect. 3, rule 22 ; chap. 145, sect. 40 ; chap. 115, sect. 68.

One of the jury who rendered the verdict in this case, was cousin of the wife of the defendant, and consequently was related to him by affinity within the sixth degree. If this had appeared at the trial, it would have constituted a legal disqualification of the juror. But the exception was not then taken in season to prevent his sitting in the cause. The plaintiff has filed his affidavit, stating "that he never gave his consent thereto, and that he did not know of said relationship till since the trial of said cause, and till after the verdict was rendered therein." Of course he could not have made the objection until he had been apprised of the fact.

The testimony of the juror, John Dunham, has been taken

Hardy *v.* Sprowle.

for this hearing, and he states the relationship, and ' that he had long known the defendant's wife, his cousin,' but that he " never knew the defendant." " The relationship did not bias my mind in deciding the case. I had no conversation with the defendant, and the relationship did not occur to me during the trial and subsequent deliberation." The juror might have had full knowledge of the affinity, without ever having any personal acquaintance with the defendant. He could have known that the defendant was a relative, without having any knowledge of his person. Thus situated the juror was not qualified to sit in the trial of the cause. The law is general, and prescribes the rule of disqualification rigidly, and regardless of the fact whether the juror might or might not be biased by the relationship, in a given case. Without doing injustice to any, it assumes that all, thus related, may be influenced by that consideration, and holds them incompetent to act and decide impartially.

*Verdict set aside, and a new trial granted.*

*A. Merrill,* for the plaintiff.

*Ruggles* and *Dickerson,* for the defendant.

---

NOTE BY THE REPORTER. — It is generally required, that a person, when acting upon any question, in which others are interested as parties, should be disinterested or indifferent; and by the R. S. c. 1, § 3, R. XXII, if such person stand within certain degrees of relationship, either by consanguinity or affinity, to either of the parties, he is not considered disinterested or indifferent, but is disqualified to act, except by express consent. This being a principle, liable to be invoked in every suit at law, it is hoped that the following short exposition, deduced chiefly from Blackstone's Commentaries, will not be unacceptable, to some of the readers of the Reports.

In reckoning the degrees of relationship, *as to collateral kindred*, there is a wide difference between the rules of the civil law, and those of the common law, into which the canon or ecclesiastical law was adopted. As to lineal kindred, all the codes are in harmony.

Lineal consanguinity subsists between persons of whom one is descended in a direct line from the other. Thus, there is lineal kindred between a man and his father, grandfather, great-grandfather, and so upwards in the direct line. And there is lineal kindred between a man and his son, grandson, great-grandson, and so downwards in the direct line. Every generation in this *lineal*, direct consanguinity, constitutes a different degree, reckoning either upwards or downwards. Thus the father of a man is related to him in the first degree, his grandfather is related to him in the second degree, and his great-

grandfather in the third. So his son is related to him in the first, and his grandson in the second, and his great-grandson, in the third degree.

*Collateral* kindred agrees with the lineal in one respect; which is, that collateral relations descend from the same stock; but differs in this; that they do not descend one from the other.

Collateral kindred, then, are such as lineally spring from one and the same ancestor. Thus, if A have two sons, who have each a numerous issue, both these issues are lineally descended from A as their common ancestor. They are *collateral kinsmen* to each other, because of having the blood of that common ancestor in their veins, which denominates them *consanguineos*.

So many *ancestors* as a man has, so many *common stocks* he has from which collateral kinsmen may be derived. In the civil law, for computing degrees of relationship, (which has been adopted in Maine by the statute above-mentioned,) the rule is to count upwards from either of the persons related, to the common ancestor, then downward to the other party related, reckoning a degree for each person both ascending and descending. For example, a man is related collaterally to his brother in the second degree; to his nephew in the third; and to his grand-nephew in the fourth; that is, counting upwards from himself to his father, (who is the common ancestor,) is one degree; and from his father downward to his brother is another degree, making the second; to his nephew, (or brother's son,) makes the third; and to his grand-nephew is another degree, making the fourth. So, one's uncle stands in the third degree; viz. from himself upwards to his grandfather, who is the common ancestor, is two degrees, and from that common ancestor down to the uncle is another, making the third degree. By the same mode of computing, if there be second cousins, B and R, it will be found they stand in the sixth degree to each other; viz. from B upwards to the great-grandfather, who is, in such cases, the common ancestor, is three degrees; and from that common ancestor through his son and grandson to his great-grandson R., is three degrees more, making in the whole, the six degrees. And the same rule of computing extends to all the degrees of kindred, however remote.