OTTO BENNETT
*vs.*
STATE OF MAINE, ET AL.

Knox.   Opinion, November 18, 1965.

*Frank F. Harding,* for Petitioner.

*John W. Benoit, Asst. Atty. General,* for Respondents.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, MARDEN, RUDMAN, DUFRESNE, JJ.

DUFRESNE, J.   On appeal from discharge of the writ of habeas corpus by a single justice.

Otto Bennett was indicted, tried and convicted, at the October term, 1960, of the Superior Court for Knox County.   His exceptions (1) to the denial of his motion for a directed verdict,  (2) to 13 allegedly erroneous rulings on evidence and (3) to part of the charge, were overruled by this court.   *State* v. *Bennett,* 158 Me. 109, 179 A. (2nd) 812 (1962).

Incarcerated in State prison in pursuance of sentence received in those proceedings, Bennett sought further relief from the federal courts on the grounds that his conviction was not supported by sufficient credible evidence.   This

attack fizzled in the Circuit Court of Appeals. *Bennett* v. *Robbins,* 329 F. (2nd) 147 (March 16, 1964).

Bennett's subsequent extramural endeavor 3 months later sought the issuance of the writ of habeas corpus in our Superior Court. The writ issued, full hearing ensued and Bennett now appeals from the denial of relief and from the discharge of the writ by the single justice who found the petitioner's multiple lateral attacks on the court's original judgment without legal avail.

Bennett's present grievances are listed under 9 separate topics, the last of which, nomenclated incompetency of counsel, is subdivided into 11 accusations directed at his trial attorney's conduct.

These alleged trial errors noted in the bill of grievances and within the statement of points on appeal may be succinctly expressed as follows: (1) variance between the date of the offense as specified in the indictment and the date borne out by the evidence; (2) nonadmission into evidence of respondent's exhibit #1, a so-called employment chart, after court had deferred ruling on its admissibility, when in fact there was no further request for a ruling thereon or move for later admission; (3) alleged prejudicial remark of the presiding justice about testimony; (4) alleged prejudicial remark of the presiding justice to defense counsel; (5) alleged prejudicial argument by state counsel; (6) disqualification of 2 jurors, (a) Chester Leonard who was first cousin to Carlisle Leonard, the said Carlisle Leonard's wife being a sister to the prosecutrix's mother and (b) Simon Hamalainen, the other juror who was the son-in-law and employee of Rivers Emil, the owner of Rivers Emil Incorporated, with which corporation the prosecutrix's father had done business in the past; (7) inconsistency of prosecutrix's testimony with her prior statements under oath; (8) state counsel's knowing use of prosecutrix's alleged perjured testimony.

None of these alleged trial errors were objected to at the trial level, nor were they submitted for review on appeal. All were considered and found legally wanting by the single justice, either in law or in fact and law.

Such trial irregularities as consist of variance between the allegata and the probata, or have to do with the admissibility of evidence or may be prejudicial remarks by the trial judge or argument of the prosecutor, are all matters for consideration on appeal and not in post-conviction habeas corpus under M.R.S.A. Title 14, § 5502.

Post conviction habeas corpus is available under the statute *"provided that the alleged error has not been previously . . . . . . . . . waived in the proceeding resulting in the conviction"*. . . . . . . .

Where objections to these alleged trial irregularities were not raised in the trial court, they must be deemed waived, and will not be considered for the first time on appeal. *State* v. *Smith,* 140 Me. 255, 37 A. (2nd) 246. None can be classed as 'highly prejudicial' or 'well calculated to result in injustice' or otherwise so fundamentally unfair as to prevent an impartial trial or a true verdict based solely on the evidence and the law applicable thereto, where an exception to the above rule is permitted. *State* v. *Smith, supra.*

In *State* v. *Bennett,* 158 Me. 109, at page 111, 179 A. (2nd) 812, 814, this court said:

> "But real and spoken evidence and their advantage in observing the principals and witnesses completely vindicate the jurors in their verdict of guilt beyond a reasonable doubt."

This court's study of the record did not then, nor does it now, convince us that manifest errors exist and that injustice will result unless these alleged irregularities are examined.

Furthermore, post-conviction habeas corpus, a successor to the writ of error *coram nobis,* is not an appeal, *Dwyer* v. *State of Maine,* 151 Me. 382, 120 A. (2nd) 276, and M.R.S.A. T. 14, § 5502 expressly states that

> "the remedy of habeas corpus provided in sections 5502 to 5508 is not a substitute for nor does it affect any remedies which are incidental to the proceedings in the trial court."

Therefore, these alleged trial irregularities are not properly for our consideration as such.

Petitioner claims, however, amongst these stated trial errors, that 2 of the jurors at his trial were not disinterested and that he was thereby deprived of his constitutional right to be tried by an impartial jury.

Because "a fair trial is the implicit end, and the very essence of constitutional government," we will examine the petitioner's charge in this respect.

It is true that

> "(i)n all criminal prosecutions, the accused shall have a right . . . . . . . . to have a(n) *impartial* trial, . . . . . . . . by a jury of the vicinity" (Emphasis supplied.) Article I, section 6, *Constitution of Maine.*

An impartial trial necessitates an impartial jury.

> "The administration of justice requires that verdicts, criminal as well as civil, shall be found by impartial juries, and shall be the result of honest deliberations absolutely free from prejudice or bias. The public as well as the accused have rights which must be safeguarded." *State v. Slorah,* 118 Me. 203 at 210; 106 A. 768.

A potentially partial jury will not do.

> "To render a verdict void in civil cases it need not appear that the jury was actually prejudiced, biased, or influenced by the occurrence. If it may

have affected their ability to render an impartial verdict, it is sufficient . . . . . the same considerations should apply in criminal cases whether it might affect adversely the State or the respondent . . . . . Both are entitled to a fair trial." *State* v. *Slorah, supra,* at page 211.

M.R.S.A. Title 14, § 1301, is declaratory of the common law and has set up the legal machinery at trial whereby the parties may safeguard their constitutional right to an impartial trial by an impartial jury, a fundamental and basic concept of justice under our judicial system.

> "The court, on motion of either party in an action, may examine, on oath, any person called as a juror therein, whether he is related to either party, has given or formed an opinion or is sensible of any bias, prejudice or particular interest in the cause. If it appears from his answers or from any competent evidence that he does not stand indifferent in the cause, another juror shall be called and placed in his stead."

See, *Agricultural Corp.* v. *Willette,* 120 Me. 423 at pages 425, 426, 115 A. 170.

By statute a relationship by consanguinity or affinity with within the 6th degree according to the civil law, or within the degree of 2nd cousins inclusive, will disqualify a person who is required to be disinterested or indifferent in a matter in which others are interested. M.R.S.A. Title 1, § 71 (6).

The rule has been applied to jurors, *Lane* v. *Goodwin,* 47 Me. 593 (1860) ; *Hardy* v. *Sprowle,* 32 Me. 310 (1850). In the latter case, our court has said at page 312:

> "The law is general, and prescribes the rule of disqualification rigidly, and regardless of the fact whether the juror might or might not be biased by the relationship, in a given case. Without doing injustice to any, it assumes that all, thus related,

> may be influenced by that consideration, and holds them incompetent to act and decide impartially."

The basis for the disqualification of a juror because of relationship to one of the parties is the fact that such relationship may influence the juror in his deliberations and decisions. The statute further recognizes that other interests, besides those of relationship, may just as readily subject a juror to possibility of influence establishing disqualification within the statutory concept of sensibility "of any bias, prejudice or particular interest in the cause;" such may arise of course because of business relations.

However, M.R.S.A., Title 14, § 1303, imposes upon the parties a duty to disclose any known objection under penalty of waiver of the objection.

> "If a party knows any objection to a juror in season to propose it before trial and omits to do so, he shall not afterwards make it, unless by leave of court for special reasons."

Our court has said that

> "in season" "before trial" must mean "before the termination of the trial." "The party cannot keep quiet and speculate upon the chances of a verdict in his favor. He should, at the first opportunity after the discovery is made, make an open disclosure of the fact for the benefit of all concerned." *Brown* v. *Reed*, 81 Me. 158 at page 161.

In cases where the objection to a juror is his relationship to a party, there is no waiver when the objecting party is not aware of any circumstance affecting the competency of the juror, until after verdict, and the verdict must be set aside. *Jewell* v. *Jewell*, 84 Me. 304, 24 A. 858 (1892); *Lane* v. *Goodwin*, 47 Me. 593 (1860); *Hardy* v. *Sprowle*, 32 Me. 310 (1850).

We have belabored this issue because of the great importance we attach to the constitutional entitlement of a

party accused of crime to an impartial jury trial. Therefore, let us assume for the purposes of this case, but we are not deciding the point, that relationship of a juror, within the statutorily designated degrees, to the State's principal witness, the accuser sometimes referred to as the prosecutrix, would similarly disqualify a juror, even though such relationship does not come within the literal dictates of the statute which refers to relationship to "either party," still this would not avail any legal relief to Otto Bennett.

Indeed, the alleged relationship between the juror, Chester Leonard, and the victim of the statutory rape of which Bennett was found guilty, consisted in the fact that the juror's first cousin was married to the sister of the victim's mother. The wife of the juror's first cousin would come within the statutory disqualifying degree of relationship by affinity, but not her relatives. *Chase* v. *Jennings*, 38 Me. 44, 45 (1854).

Furthermore, the single justice found on evidence properly sustaining such finding, that neither of the 2 jurors objected to were otherwise disqualified by reason of interest. Such findings of fact by a single justice in habeas corpus proceedings are not to be set aside unless clearly erroneous. Rule 52(a) of M.R.C.P.

Otto Bennett's charge that the State's prosecutor knowingly used perjured testimony at trial is not borne out by the evidence, is contrary to the findings of the single justice thereon, and thus is legally insufficient on appeal.

Bennett further seeks relief from sentence on the grounds that counsel of his choice at trial and on the previous appeal to this court, was incompetent.

Bennett indicts his attorney because of the following trial errors: (1) failure to move or press again the admission of the employment chart, so-called, after ruling thereon had been deferred by the court; (2) failure to move for

mistrial or directed verdict (a) for alleged prejudicial remarks of the court, (b) for insufficiency of prosecutrix's testimony and her coaching by the county attorney, (c) for prejudicial argument of the county attorney; (3) failure to request a record of opening statement of the county attorney and of arguments of counsel; (4) erroneously advising him that he was required by law to testify.

He further complains against his attorney for not perfecting his previous appeal on what he calls the constitutional errors at the trial, and for informing him erroneously as to any further legal redress in the federal courts.

The employment chart, so-called, which Bennett now says his attorney should have pressed for admission at trial, was not of substantial value so far as the evidence was concerned in this case, and the single justice accepted the attorney's recollection that the petitioner and himself had decided that it was not important. Such finding supported by evidence and not obviously erroneous is controlling. Counsel did no more than properly exercise his judgment on a matter of trial tactics. The petitioner was not thereby denied a fair trial or deprived of any constitutional right.

During direct examination, petitioner's counsel sought to elicit from his wife the reason for their failure to have relations after she had noticed on her husband some abnormal physical condition. Upon objection, the presiding justice remarked:

> "THE COURT: Now we are in an area where it might be that only the respondent could give the answer to that question, and I don't know what the answer might be, but this witness of course cannot testify to anything that her husband told her about his condition and whether it affected his ability to have relations. Can you rephrase the question in any way?
>
> MR. GROSSMAN: I will try to your Honor.

THE COURT: Or it may be that only the respondent can explain that." . . . . . . . . .

"MR. PAYSON: I object again to the conclusion drawn by this witness as to her husband's condition. Only he and a qualified doctor can testify to that. I don't object if she attempts to describe it.

THE COURT: She should describe it.

MR. GROSSMAN: Would you describe your husband's condition in September 1959 as it appeared to you and tell us whether it appeared - - - tell us what the appearance was as it compared to the appearance that you saw it in August of 1959?

THE COURT: If the appearance changed for the worse or for the better she can describe it so long as she is testifying as to what she observed.

MR. GROSSMAN: Do you understand the question?

A  I believe so.

Q  Answer it, Mrs. Bennett."

The petitioner's wife thereafter fully testified to her husband's physical condition.

These remarks of the court at trial were misconstrued by the petitioner, were found to be innocuous by the single justice, and from the record of the evidence could not have prejudiced the petitioner with the jury. Counsel's failure to press the same as error on appeal was not incompetent conduct.

The record bespeaks the sufficiency of the prosecutrix's testimony to sustain conviction and the petitioner's further cry of coaching of the prosecutrix by the county attorney nowhere is substantiated in the record. There was no counsel error in not incorporating on appeal such unsupportable conclusions of petitioner's imagination.

The alleged prejudicial argument of the county attorney, not objected to at trial nor brought up for review on appeal, was not shown to be without the bounds of propriety, and cannot serve as legal basis for a shout of incompetency of counsel. A recital of the particulars would not benefit posterity.

Failure to request recording opening statements and arguments of counsel does not spell out incompetency of counsel since it has not been the usual practice in this State to record the same. Counsel followed the recognized practice deemed proper by the courts.

Petitioner's counsel denied advising Bennett that he was legally required to take the stand, but testified to the fact that Bennett "was very anxious to testify" in his behalf and "felt as though his testimony was of paramount importance." Such testimony, accredited by the single justice, disproves any counsel incompetency.

All the charges of incompetency of counsel made by Bennett in this case may appear substantial in the mind of a dissatisfied prisoner who looks for a scapegoat after the legal battle has been lost, but upon judicial analysis, they do not, singly or cumulatively, cast a sliver of doubt upon the fairness and adequacy of the original trial nor upon the sufficiency of the appellate proceedings.

Where accused was represented by counsel of his own selection, he cannot complain of counsel's incompetence, errors of judgment or mismanagement of his defense unless the representation was of such poor calibre as to reduce the proceedings to a farce and a sham, as where the representation was so ineffective as to make the conviction a mockery or manifest miscarriage of justice. *Burton* v. *U. S.*, U.S.C.A. 151 F. (2nd) 17 (D.C. 1945) ; *People* v. *Wein*, 326 P. (2nd) 457, 50 C. (2nd) 383 (1958) ; cert. denied 79 S. Ct. 98, 358 U.S. 866, 3 L. Ed. (2nd) 99; *People* v.

*Robillard,* 358 P. (2nd) 295, 300, 55 C. (2nd) 88 (1960), 83 A.L.R. (2nd) 1096, cert. den. 81 S. Ct. 1043, 365 U.S. 886, 6 L. Ed. (2nd) 199; *People* v. *Strader,* 177 N.E. (2nd) 126, 23 Ill. (2nd) 13 (1961); *State* v. *Benson,* 72 N.W. (2nd) 438, 247 Iowa 406 (1955); *Lotz* v. *Sacks,* U.S.C.A. 6th C. (Ohio), 292 F. (2nd) 657 (1961); *O'Malley* v. *United States,* U.S.C.A. 6th C. (Ohio), 285 F. (2nd) 733 (1961). See also 21 Am. Jur. (2nd) Criminal Law § 315; 74 A.L.R. (2nd) 1397; 23 C.J.S. Criminal Law § 982 (8).

As a prerequisite to relief, erroneous conduct of counsel must be of such character as to have deprived the accused of his constitutional right to a fair and impartial trial, or otherwise of due process.

> "The fact that a criminal, after conviction, is of the opinion that the trial was not properly or wisely conducted by his counsel, constitutes no ground for the issuance of a writ of habeas corpus unless counsel's conduct was so prejudicial as to deprive defendant of a fair trial or otherwise deprive him of due process." *Commonwealth* v. *Banmiller,* 143 A. (2nd) 657, 393 Pa. 530.

> "It is easy to condemn the exercise of counsel's judgment after the case is lost which would be praised if the case were won. But no lawyer can be expected to do more than exercise a reasonable skill which cannot be fairly judged by the result of the trial alone." *Commonwealth* v. *Thompson,* 367 Pa. 102, 109, 79 A. (2nd) 401, 404 (1951).

> "The right to counsel and the effective assistance of counsel does not vest the petitioner with the absolute privilege of retroactively assessing the quality of his counsel's trial representation against his present feeling as to what might have been better strategy." *Commonwealth ex rel. Davis* v. *Maroney,* 210 A. (2nd) 920 at 922, 206 Pa. Super 68 (1965); *LaRue* v. *Rundle,* 417, Pa. 383, 207 A. (2nd) 829.

Counsel in the trial of cases is faced with innumerable decisions of strategy which arise as the trial scene unfolds. He has to judge whether jurors should be challenged, whether to use a certain type of *voir-dire* questionnaire in ascertaining the impartiality of the jury. The type of cross-examination, easy or forceful, must be elected, depending on what in counsel's sound discretion, will be the least prone to prejudice the jury. He must advise the accused on the knotty and very crucial question as to whether the accused should testify. He is always aware of the danger of objecting too much. He must be careful in his handling of objections to judicial conduct. The tenor of his argument will vary according to the atmosphere at the time of presentation. There may be many other trial problems to solve. His main purpose must be to procure for his client a fair trial within the norms of due process.

Much discretion must be permitted counsel. Strategy at trial will not legally support the setting aside of a conviction through habeas corpus, unless the cumulative effect of the trial errors ascribed to counsel has reduced the trial to a farce or a sham, or the legal representation was of such low calibre as to amount to no representation. *U. S. ex rel. Feeley* v. *Ragen,* 166 F. (2nd) 976; *People* v. *Reeves,* 107 N.E. (2nd) 861, 412 Ill. 555; *Mitchell* v. *U. S.,* 259 F. (2nd) 787 at pages 792 and 793.

Massive recrimination against counsel's trial conduct will avail nothing, where, as in this case, the trial atmosphere was fair, the rights of the accused properly and competently protected and the jury verdict just.

Petitioner was satisfied with the conduct of his attorney during trial as there is no suggestion in the record of any complaint on his part to the presiding justice. Petitioner's confidence carried through beyond the trial scene until his appeal was denied by this court; after the petitioner realized that his avenues of escape from sentence had been

sealed, it is then, and only then, that he first voiced these charges against counsel.

We have carefully perused the whole record and we find absolutely no merit in petitioner's accusations. Counsel displayed constant alertness and vigor throughout a lengthy trial, made numerous and wise objections to State's evidence and to court rulings thereon in his endeavor to protect petitioner's rights. The cross-examination of the State's witnesses was very extensive and exhaustive. There is nothing in the record to show that the conduct of petitioner's defense was in any degree less than the conduct expected from the lawyer of average skill. The record discloses a skillful and competent defense.

As stated in our own case of *Dwyer* v. *State,* 151 Me. 382, 120 A. (2nd) 276,

> "the petitioner, at a hearing on a writ of error coram nobis (now habeas corpus), is not presumed innocent. The petitioner must, therefore, prove the truth of his allegations to the satisfaction of the presiding justice by a preponderance of evidence."

> "A judgment of conviction carries with it a presumption of regularity which cannot lightly be set aside . . . When a judgment of conviction is attacked collaterally in habeas corpus, the complaining party has the burden of clearly establishing the facts which would justify the conclusion of lack of due process which he asserts." *Commonwealth ex rel. Storch* v. *Maroney,* 204 A. (2nd) 263, at page 265, 416 Pa. 55 (1964). *Commonwealth ex rel. Davis* v. *Maroney,* 210 A. (2nd) 920, 206 Pa. Super 68 (1965).

The petitioner has the burden of proof, albeit only by the fair preponderance of the evidence, *Dwyer* v. *State, supra;* he has the burden of showing fundamental unfairness in the trial proceedings. In this he has failed dismally.

Petitioner's further complaint that his counsel erred in not advising him properly as to his right to relief on the federal level, is devoid of factual basis and need not be further considered.

Our review of the record satisfies us again that petitioner had a fair and impartial trial upon the merits, that he was properly represented by competent counsel during all phases of the trial and that the jury returned a proper verdict. The discharge of the writ of habeas corpus by the single justice was correct.

The entry will be

*Appeal denied.*