**STATE of Maine**

**v.**

**Larry M. TROTT.**

Supreme Judicial Court of Maine.

March 31, 1972.

---

Peter W. Culley, William F. Gore, Asst. Attys. Gen., Augusta, for plaintiff.

William Talbot, Machias, Francis A. Brown, Calais, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEBBER, Justice.

Defendant appeals from a conviction of the murder of his grandfather, Charles H. Trott, a man 86 years of age. The jury could have found on the basis of direct and circumstantial evidence and reasonable inferences to be drawn therefrom that on October 1, 1968, the day before this homicide occurred, the defendant was without funds; that he was served with a summons in a divorce action instituted by his wife; that, angered by this action, he formed the intention to travel from Eastport to Calais, to purchase a gun and thus armed, effect a confrontation with his wife; that he felt the need of funds to defray the cost of travel to Calais and the purchase of the gun; that his efforts to borrow the requisite funds from friends were not successful; that on that same day the decedent Charles H. Trott cashed a check for approximately $95; that in the early morning hours of October 2, 1968 the defendant arrived at the home of the decedent who lived alone; that the defendant pounded on the door and sought admission which was repeatedly refused by the decedent; that in the course of pleading for and demanding admission, defendant informed his grandfather that he was drunk and cold; that defendant, still not having gained admission, finally said, "You let me in or I will break the _____[1] door down,"

1. Obscenity omitted.

whereupon after more pounding the door was opened, the lights in decedent's home went out, and there was an "ungodly screech"; that immediately thereafter defendant was heard to say, "Grandpa, I didn't do it," but the voice of the decedent was not again heard; that defendant then emerged and vomited after which he reentered the house; that shortly after, he again emerged carrying the inert body of the decedent over his shoulder; that he proceeded with it toward a wharf and the ocean; that defendant twice thereafter returned to decedent's home using the lights while he was inside; that defendant thereafter arranged to be taken by taxi to Calais where he spent the rest of the night in a hotel; that he paid the driver $10 for the fare and voluntarily gave him an additional $2 "to keep (his) mouth shut;" that he informed the driver that he had about $200 which he asserted had come to him from an unnamed friend from "Washington"; that in Calais he displayed adequate funds with which to pay his hotel bill, to buy his breakfast and liquor during the forenoon, to purchase a gun and ammunition and to buy new clothes; that the body of the decedent was found floating in the water near the wharf on the morning of October 2; that shortly before his death the decedent had suffered bruises about the head and face and the fracture of nine ribs; that at least one of his pants pockets had been pulled inside out and the pants torn along the seam near the pocket; that no money was found on the decedent's person nor, in the course of an exhaustive search, in his home; and that the decedent was alive when he entered the water and that he thereafter drowned. No evidence was forthcoming from any source tending to suggest that the decedent was killed by the defendant while the latter was in the heat of passion produced by sudden provocation such as would be required to justify a verdict of manslaughter. The evidence

therefore fully supports the jury's conclusion that the defendant was guilty of murder and indeed it is difficult to see how any other verdict was rationally supportable.

We turn now to other specific points of appeal.[2]

"1. It was prejudicial error to allow David R. Clemons to serve as a jury officer since he was scheduled to be a witness for the State and did in fact testify."

■ This issue cannot be raised for the first time on appeal. The controlling principle is set forth in Bennett v. State of Maine et al. (1965) 161 Me. 489, 492, 214 A.2d 667, wherein it was stated:

> "Where objections to these alleged trial irregularities were not raised in the trial court, they must be deemed waived, and will not be considered for the first time on appeal. State v. Smith, 140 Me. 255, 37 A.2d 246. None can be classed as 'highly prejudicial' or 'well calculated to result in injustice' or otherwise so fundamentally unfair as to prevent an impartial trial or a true verdict based solely on the evidence and the law applicable thereto, where an exception to the above rule is permitted. State v. Smith, supra." [3]

When this trial was about to commence, the Justice below indicated to counsel and to the defendant in the absence of the jury that Mr. Clemons, a deputy sheriff assigned to duty as a jury officer, was to be called by the State as a witness but only as to continuity of control and custody of the decedent's body. The defendant and his counsel gave their consent to this procedure. The officer was later called and gave the anticipated brief testimony without objection. Subsequently, the presiding Justice had occasion to hold a preliminary hearing in the absence of the jury for the

---

2. Point # 3 raises the issue as to the sufficiency of the evidence to support the verdict, first above discussed.

3. See M.R.Crim.P., Rules 51 and 52(b).

purpose of determining whether certain alleged admissions[4] might be admitted in evidence. Mr. Clemons was recalled and without objection gave evidence as to circumstances existing when defendant was interrogated by other officers, the giving of warnings as to constitutional rights and the like. The Court ruled that any evidence bearing on alleged admissions or confessions must be excluded and thus Mr. Clemons gave no further testimony in the presence of the jury. No objection was ever made to his continuing to serve as jury officer. No request for mistrial was made. There is no hint or suggestion, even on the part of the defendant, that there was any impropriety with respect to the officer's relations with the jury. The defendant's objection, if he had any, must be deemed waived.

■ In so saying, however, we do not wish to seem to lend any encouragement to the practice. Persons can and should be found to attend the jury who do not have such knowledge of the case as is likely to require their services as witnesses for either the State or the defendant. The relationship between attending officer and jury is necessarily a close and continuing one. At the very least, the use of such an officer as a witness is a fruitful source of time consuming argument on appeal or subsequent collateral attack on a conviction. At worst and under circumstances very different from those existing in the instant case, the problem can assume constitutional proportions and necessitate a new trial.[5] The better practice and in fact the only entirely safe course is to keep separate the roles of witness and jury officer.

"2. The Defendant was aggrieved by the refusal of the Court to grant his motion in arrest of judgment."

■ No doubt recognizing that reasons advanced below in support of this motion were frivolous and devoid of merit, as indeed they were, the defendant did not brief or argue this point on appeal. We treat the point as abandoned.

"4. The Court erred in the instructions to the jury in indicating that there was more than one type of murder in Maine."

■ This point is governed by M.R. Crim.P., Rule 30(b) which states in pertinent part:

" * * *. No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

In this case no objection was offered as required by the rule and the point is not saved on appeal.[6]

"5. The Court erred in the instructions to the jury by charging that it is murder if the killing happens while the defendant is engaged in committing a felonious act."

The point as thus worded does not fairly or accurately paraphrase what the Justice below actually instructed the jury. He said, "And I will tell you now if a person is engaged, and I mean by that is presently engaged in the commission of a felony and if while so engaged in the commission of a

---

4. The content of these alleged admissions and confession nowhere appears in the record as a result of their exclusion by the trial Court. As noted, they never reached the jury.

5. See Turner v. Louisiana (1965) 379 U. S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, where jury officers were key witnesses on the issue of guilt or innocence and not merely giving evidence as to "some un-

controverted or merely formal aspect of the case." Under the circumstances existing in *Turner*, the Court saw a denial of due process.

6. There was no error in any event. The Justice characterized homicide with express malice as a different "type" of murder from homicide with implied malice. He was not discussing *degrees* of murder and could not be so understood.

felony the death of another person results, such a person would be guilty of murder because the law would imply malice from the fact that the person was engaged in the commission of a felonious act." This was a correct statement of the applicable law. Here again the point is not saved on appeal under Rule 30(b) since no objections were lodged.[7]

"8. The Court erred in the instructions to the jury by charging that the crime of murder involved 'malice of forethought' which phrase introduced a new definition of murder, not defined in the Statutes of this State."

This point raises serious doubts as to the accuracy of the record supplied to the Law Court on appeal and poses policy questions as to what course this Court can and should pursue either when the record is meaningless and incomprehensible or the Court is satisfied that the record is patently erroneous. When in the course of his instructions the Justice below reached the point of discussing the particular offense charged and the law specifically applicable thereto, he began by *reading* to the jury the statutory definition of murder found in 17 M.R.S.A., Sec. 2651. The statute reads, "Whoever unlawfully kills a human being with malice *aforethought, either express* or implied, is guilty of murder * * *." (Emphasis ours). Nevertheless, the record indicates that what the Justice read was, "Whoever unlawfully kills a human being with malice *or forethought even expressed* or implied is guilty of murder." (Emphasis ours). When the Justice below turned his attention to a possible verdict of manslaughter he began by *reading* to the jury the pertinent portion of 17 M.R.S.A., Sec. 2551 which provides: "Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without *express* or implied malice *aforethought* * * * or commits manslaughter as defined by the common law, shall be punished * * *." We find in the record, however, "Whoever, unlawfully kills a human being in the heat of passion on sudden provocation without *expressed* or implied malice *or forethought* or commits manslaughter as defined by the common law shall be punished, etc." On at least fifteen other occasions we find in the record this same garbled substitution for "aforethought" and "express."[8] In some instances it is apparent that the Justice was *reading* directly from leading Maine cases in which the classical phrase "malice aforethought either express or implied" was being explained and defined. The Justice presiding was and is one of the most able, experienced and learned Justices in our judicial system. It is inconceivable that he would or ever did use the language attributed to him by this record. Moreover, the case was tried by competent and experienced counsel, themselves thoroughly familiar with the time honored legal phraseology under consideration. They heard what was said to the jury and their failure to object or comment thereon speaks volumes as to the accuracy of this record. It is transparently obvious to us that this record is in error and that in actuality the Justice below in each instance enunciated the words "malice aforethought" and "express or implied."

7. As the facts were postured, the jury could have found any one of three felonies committed resulting in the death of the decedent. It must be noted that the res gestae embraced one continuous act commencing with the altercation at decedent's home and culminating when decedent was cast alive into the sea to drown. In his explanation of the felony-murder rule, the presiding Justice adequately defined each of the three possible felonies, robbery, assault with intent to rob, and assault and battery high and aggravated. The act of carrying the decedent, either unconscious or unable to resist, to the wharf, and casting him alive into the sea was itself assault and battery high and aggravated since it was an act of such a nature as to cause death or serious bodily harm. When in fact death did result the felony-murder rule had application.

8. In some instances the record shows "malice *of forethought.*" (Emphasis supplied)

As one alternative we could under inherent powers of an appellate court remand the case, retaining jurisdiction meanwhile, for correction of manifest errors in the record. This was the course followed under remarkably similar circumstances in Parker v. State (1964–Del.) 205 A.2d 531, 533. The Court said, "By the very nature of the right to review, of necessity we must have an adequate and accurate record of the proceedings below." We conclude, however, that in the instant case it is unnecessary to incur the delay attendant upon such a remand since the case can properly be decided upon the existing record.

We have dealt with the record problem at some length as a part of our responsibilities for judicial administration. The Justices at nisi prius are entitled to some protection from public assertion of error based upon actions they never took or words they never uttered and if we do not see fit to remand for correction, we can at least by our opinion make abundantly clear our awareness that this is what has occurred. We could, of course, rather summarily dismiss this Point of Appeal as not saved below under Rule 30(b), that being the case. We have, however, reviewed the instructions to ascertain whether, even upon the erroneous record before us, there is manifest or obvious error as defined by *Bennett, supra*. The careful and painstaking legal definitions and explanations as shown on this record which relate to the recorded language, "malice or (of) forethought either (even) expressed or implied" gave to those words for the purposes of this trial the same meaning required to be given to "malice aforethought either express or implied." The jury was instructed that they must accept the law as given to them by the Court, they being the sole arbiters of the facts. Thus the law of the case given to them for application to the facts was correct law, even on this record, and would not lead to an erroneous verdict. Point 8 is without merit.

Lastly, the defendant contends that we should adopt and apply to this case the so-called "felony-merger" doctrine which has found favor in some jurisdictions. The doctrine has never been adopted or even considered in this State. We decline to consider such an abrupt departure from our prior decisional law in a case in which the proposed change was not presented or considered below and is of doubtful application to the facts of this case. Rule 30(b) controls.

The entry will be

Appeal denied.

All Justices concurring.

ARCHIBALD, J., did not sit.