**STATE of Maine**

v.

**David HOLMBOM.**

Supreme Judicial Court of Maine.

Argued May 7, 1980.

Decided May 28, 1980.

David M. Cox, Dist. Atty., Gary Thorne, Asst. Dist. Atty. (orally), Dover-Foxcroft, for plaintiff.

Billie Wolf (orally), Greenville, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ., and ARCHIBALD, A. R. J.

McKUSICK, Chief Justice.

Defendant appeals from his conviction for attempting to operate a motor vehicle while under the influence of liquor, 29 M.R.S.A. § 1312 (Supp.1979), after a bench trial in the Superior Court, Piscataquis County. Defendant's sole contention on appeal is that the evidence was insufficient to establish beyond a reasonable doubt that he was the operator[1] of the vehicle involved in the incident, rather than a mere occupant. Since we find the evidence sufficient to sustain defendant's conviction, we deny the appeal.

The only witness at trial, Officer Nickerson of the Maine State Police, testified that at about 7:00 p. m. on November 24, 1978, he came upon a one-ton truck stuck in a ditch off the side of the roadway in Greenville. The ground was covered with three or four inches of new snow, and Officer Nickerson observed a single set of tire tracks leading from the road to the spot in the ditch where the truck was standing. Closer inspection of the tire tracks and of the condition of the tire treads indicated that the truck had slid down the embankment, rear end first, while its operator had

---

1. Since the evidence adduced at trial was sufficient to establish that defendant had *actually* operated the vehicle while under the influence, his conviction for *an attempt* to operate was permissible. *State v. Moores*, Me., 396 A.2d 1010 (1979); 17–A M.R.S.A. § 152(1) (Supp. 1979).

been trying unsuccessfully to drive it up the embankment in a forward gear. As Nickerson approached the truck, he saw defendant, the lone occupant of the vehicle, sitting behind the wheel and heard him shut the engine off. Noting that the driver's door could not be opened from the inside, Nickerson opened it for defendant and immediately became aware that the latter was highly intoxicated—in the officer's words, "plastered." Telling defendant to get into the police cruiser, the officer briefly looked into the truck cab. Nickerson's direct testimony (as recorded in the official court reporter's transcript of the trial) continued with the following question and answer:

Q And did you return to your cruiser at that point?

A No, sir, I walked around both sides of the truck to make sure that—what I was trying to prove was that nobody else had been in the vehicle and there were no footprints leading from the truck on either side.

At the conclusion of Nickerson's cross-examination, both sides rested, defendant's motion for acquittal was heard and denied, and the court immediately delivered its finding from the bench. In declaring defendant guilty, the court stated:

This is one of the classic cases where in the absence of footprints in the snow it teaches us a great deal. If there hadn't been a fresh snow and no footprints, it might have been a different matter but here we have the pure snow without any footprints showing anyone leaving the truck . . . . .

Here on appeal defendant concedes that evidence of the absence of footprints in freshly fallen snow, if properly placed before the trier of fact, would have been sufficient to support the inference that defendant was the operator of the truck when it had become stuck in the ditch. He argues, however, that Officer Nickerson never explicitly stated whether he had *in fact* observed the absence of footprints. Pointing to the above-quoted excerpt from the trial transcript, defendant contends that Officer Nickerson merely stated *why* he

walked around both sides of the truck (by explaining what he was "trying to prove") but never stated, and never was asked, *what* he actually saw. Based on that reading of the transcript, defendant asserts that the Superior Court justice, in concluding that the State had proved the absence of footprints, either overlooked or forgot the incompleteness of Officer Nickerson's testimony.

We find no merit in defendant's contention. Nickerson's testimony was brief, covering only sixteen pages of the transcript. Almost immediately thereafter, the justice delivered his finding from the bench. There is no question that he had an accurate recollection of what the witness had communicated to him only a few minutes before, and there is no reason to suspect that his hearing or comprehension of that testimony was in any way impaired.

Defendant's argument is an artificial one, based on the court reporter's use or nonuse of punctuation. It seeks to exploit the inherent limitations of a cold, written transcription of spoken words. In the courtroom a witness transmits information to the factfinder not only by the words he utters, but also by the inflections, the pauses, and the hand and facial gestures that accompany those words. The best of court reporters will at times fall short of recording fully the coloration given mere words by those nonverbal forms of communication.

On appeal defendant fails in his attempt to persuade us that the Superior Court did not have before it direct and positive testimony of Officer Nickerson that "there were no footprints leading from the truck on either side." By simply inserting in the transcribed sentence a single punctuation mark to indicate a pause, Nickerson's testimony takes on the meaning that was understood by the justice:

No, sir, I walked around both sides of the truck to make sure that—what I was trying to prove was that nobody else had been in the vehicle—and there were no footprints leading from the truck on either side.

(Second dash added) It is significant that defense counsel, in arguing on the motion for acquittal before the judge's ruling, made no mention whatever of the alleged insufficiency of the evidence as to the absence of footprints, nor did counsel later see fit to correct the justice's statement that "[t]his is one of the classic cases where . . . the absence of footprints . . . teaches us a great deal."[2] As long as the transcript is susceptible of a reasonable interpretation that is entirely consistent with the guilty finding, we will not reverse the trial court. *Cf. State v. Trott*, Me., 289 A.2d 414, 418–19 (1972).

The entry must be:

Appeal denied.

Judgment affirmed.

2. We also note that on cross-examination, defense counsel inquired of Officer Nickerson concerning his critical direct testimony in the following exchange:

Q . . . Did you look around the truck in question for any other people when you came upon the Defendant?
A Yes, ma'am, I did.
Q And did you observe anyone?
A There was nobody else, ma'am.