**Robert Wayne DADIEGO, Petitioner,**

v.

**James R. CLEMMONS and James E. Tierney, Respondents.**

**Civ. No. 86–0260 P.**

United States District Court, D. Maine.

Dec. 19, 1986.

Robert Wayne Dadiego, pro se.

Joseph A. Wannemacher, Asst. Atty. Gen., Augusta, Me., for respondents.

## MEMORANDUM OF DECISION AND ORDER DENYING PETITIONER'S REQUEST FOR HABEAS CORPUS RELIEF

GENE CARTER, District Judge.

This matter comes before the Court on the petition of Robert Wayne Dadiego for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (1982). For the reasons set forth below, the petition is denied.

### I. *Procedural Background*

The procedural history of this case is as follows. Petitioner was the defendant in a criminal proceeding before the Superior Court of Maine, Cumberland County. *State of Maine v. Wesley Wentworth and Robert Dadiego,* criminal docket number CR–84–427. On September 20, 1984, a jury found Dadiego guilty of aggravated theft by receiving in violation of 17–A M.R.S.A. §§ 353, 359 (1964), a class "C" offense punishable by imprisonment for up to five (5) years. On October 9, 1984, Justice William S. Broderick sentenced Dadiego to five years in the custody of the Commissioner of the Department of Corrections.

On October 26, 1984, Petitioner filed a direct appeal of his conviction and sentence to the Supreme Judicial Court, sitting as the Law Court. Petitioner voluntarily dismissed the appeal of his conviction on April 16, 1985. The Appellate Division of the Supreme Judicial Court denied Petitioner's appeal of his sentence on July 25, 1985.

Dadiego filed a petition for post-conviction review in Superior Court on October

10, 1985. Court-appointed counsel filed an amended petition for post-conviction review on Dadiego's behalf on December 30, 1985. On May 2, 1986, following a hearing at which Justice Broderick and Dadiego testified, Justice Caroline D. Glassman, Supreme Judicial Court, denied Dadiego's petition on each ground alleged. *Dadiego v. State*, No. CR–85–1627, slip op. (Me.Sup. May 21, 1986). Dadiego then filed for a certificate of probable cause to enable him to appeal Justice Glassman's Order. *See* 15 M.R.S.A. § 2131 (Supp.1986). The Law Clerk denied the certificate of probable cause on July 25, 1985.

Petitioner is presently executing his five-year sentence in the custody of the Commissioner of the Department of Corrections, and has petitioned this Court for writ of *habeas corpus.*

## II. *Writ of Habeas Corpus*

The writ of *habeas corpus* provides a remedy for a person held in custody pursuant to the judgment of a state court when such custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1982). The significance of this procedural safeguard is reflected in article 1, section 9 of the United States Constitution, which guarantees that the writ of *habeas corpus* shall not be suspended unless in times of rebellion or invasion the public safety so requires.

### A. *Exhaustion Requirement*

Despite the importance of the writ, a petitioner seeking to obtain *habeas corpus* relief faces a significant limitation: a state prisoner must normally exhaust all available state remedies before a federal court will consider the petition. The exhaustion

requirement, originally stated in *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), has been reaffirmed in subsequent case law. *E.g., Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981), and cases cited therein. The requirement is also codified in the federal *habeas corpus* statute, 28 U.S.C. § 2254(b)–(c) (1982).[1] As described by the Supreme Court,

[t]he exhaustion requirement ... serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.... An exception is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief.

*Duckworth v. Serrano*, 454 U.S. at 3, 102 S.Ct. at 19 (citations omitted).

### B. *Remedies Under Maine Law*

Maine statutory law provides the remedies of direct appeal, 15 M.R.S.A. § 2115 (1964), and post-conviction review, 15 M.R.S.A. §§ 2121–2132 (Supp.1986).[2] The Court will consider each of these remedies in turn to determine whether Petitioner has complied with the exhaustion requirement.

Section 2115 provides that "[i]n any criminal case in the Superior Court any defendant aggrieved by a judgment, ruling or order may appeal therefrom to the law court within 10 days or such further time as may be granted by the court pursuant to a rule of court." 15 M.R.S.A. § 2115 (1964). To save a matter for appellate re-

---

1. Section 2254 provides in part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)–(c) (1982).

2. The statutory provisions for post-conviction review provide "a comprehensive and, except for direct appeals from a criminal judgment, the exclusive method of review of those criminal judgments and of post-sentencing proceedings occurring during the course of sentences." 15 M.R.S.A. § 2122. The provisions replace state *habeas corpus* remedies previously in effect. *Id.*

view, the defendant must satisfy the contemporaneous objection rule, *i.e.*, the defendant must object at trial in a manner that affords the presiding judge sufficient opportunity to correct the alleged error. *See, e.g., State v. Conwell,* 392 A.2d 542 (Me.1978) (issue not saved where defense counsel made general objection to evidence but never stated specific grounds of objection, never moved to strike evidence, never moved for mistrial, and never moved for curative instruction); *State v. Kilton,* 387 A.2d 210 (Me.1978) (failure to object to allegedly prejudicial conduct of trial court and prosecutor waived any error, absent indication that it resulted in unfair trial or unfair verdict); *Bennett v. State,* 161 Me. 489, 214 A.2d 667 (Me.1965) (failure to object to alleged trial irregularities in trial court constitutes waiver). *See also* 15 M.R.S.A. § 2117 (1964) (objections in criminal cases).

In the case at bar, Petitioner did file a direct appeal of the judgment and sentence rendered against him. The issue of exhaustion becomes complicated, however, because Petitioner voluntarily dismissed the appeal of his judgment.

The Maine Rules of Criminal Procedure clearly provide for a defendant's voluntary dismissal of an appeal. Me.R.Crim.P. 37(e). Rule 37(e), however, does not specify the effect of such a dismissal. Analogy to other rules providing for voluntary dismissal provides some guidance on this point. Maine Rule of Criminal Procedure 70(d) provides that a petition for post-conviction relief may be withdrawn without operating as an adjudication on the merits. Federal Rule of Civil Procedure 41(a), as well as the parallel Maine Rule of Civil Procedure 41(a)(1), both provide that a plaintiff's voluntary dismissal of a claim is without prejudice, unless a dismissal of the same claim has previously been filed. Analogy to

these rules might suggest that Petitioner's dismissal of his appeal in these cases should be without prejudice, so that Petitioner would be free to bring a second appeal of the issues raised on the first appeal. Such a result would, in turn, suggest that Petitioner has not yet exhausted the state remedies available to him.

Contrary to the analysis above, the fact that a state court entertained Petitioner's post-conviction petition implies that the appeal satisfied the exhaustion requirement under Maine's post-conviction review statute. This is true because the statute establishes, as a prerequisite to post-conviction review, that the Petitioner must have "previously exhausted remedies incidental to proceedings in the trial court, on appeal or administrative remedies." 15 M.R.S.A. § 2126 (Supp.1986). To the extent, then, that the opinion and order entered in the state post-conviction proceeding rules on the merits of the grounds raised,[3] this Court might reasonably infer that the presiding justice at the post-conviction proceeding determined that the appeal—even though voluntarily withdrawn—satisfied the exhaustion requirement.

■ Faced with two conflicting analyses, this Court has determined that it can best serve the purposes of the exhaustion requirement by observing the action of the state courts. As the Supreme Court has stated, the exhaustion requirement is not a jurisdictional concept but rather a tool to promote relations between federal and state government and to allow the state "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano, supra,* 454 U.S. at 3, 102 S.Ct. at 19. Given that the state court in this case chose to hear and decide the merits of several of the grounds raised in Dadiego's petition for post-conviction review, this Court deter-

---

**3.** Of the grounds raised in the post-conviction proceeding, the presiding justice dismissed two on procedural grounds as errors that could have been raised on direct appeal. The grounds dismissed were: (1) that statements allegedly made by Dadiego to arresting officer were accepted as fact even though refuted by codefendant, and (2) that error in jury instructions, including

reference to Dadiego's choice not to testify, allegedly prejudiced Dadiego's right to fair trial. In dismissing these two grounds, the presiding justice, relying on 15 M.R.S.A. § 2128(1), stated that "[t]he petitioner makes no claim that the failure to take a direct appeal from the judgment was excusable." *Dadiego v. State,* No. CR–85–1627, *supra,* at 5.

mines that Dadiego's appeal satisfies Maine's interests in the exhaustion of state remedies.[4]

The Court will therefore consider the merits of the claims raised in the *habeas* petition that were also raised in the post-conviction proceeding and not dismissed on procedural grounds.[5]

## C. *Merits of Grounds Raised in Habeas Petition*

Based on the foregoing discussion, this Court may properly consider two of the four grounds asserted in Dadiego's *habeas* petition.[6] The grounds which the Court may consider are (1) that the court failed to keep the state's portion of the plea bargain after Defendant kept his part, and (2) that Defendant received a more severe sentence because he exercised his right to a jury trial. The Court will consider each of these grounds in turn.

### 1. *Court's Alleged Failure to Keep the State's Portion of Plea Bargain*

Petitioner alleges that he withdrew his guilty plea during his Rule 11 hearing[7]

---

**4.** The Court makes this determination despite the fact that Dadiego's state petition for post-conviction review technically challenged his sentence rather than the judgment returned against him. Absent any suggestion by the parties that the grounds asserted to challenge the sentence were different from the grounds asserted to challenge the judgment, this Court finds it reasonable to assume the same grounds were asserted in each challenge.

The Court's reliance on the exhaustion requirement in the state post-conviction review statute, together with the order entered following the post-conviction proceeding, renders it unnecessary for this Court to take sides in the continuing debate over the validity of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), in light of the Supreme Court's subsequent decision in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Fay v. Noia,* the Court held that 28 U.S.C. § 2254 was limited in its application to the "failure to exhaust state remedies still open to the *habeas* applicant at the time he files his application in federal court." 372 U.S. at 435, 83 S.Ct. at 847 (footnote omitted). The Court interpreted this language to mean that federal *habeas* review was generally available to state convicts absent a "deliberate bypass" of available state remedies. Fourteen years later, without overruling *Fay,* the *Sykes* decision limited *Fay* by holding that failure to comply with the state "contemporaneous objection" rule bars *habeas* review, absent a showing of cause for noncompliance and a showing of actual prejudice. The Court found that the "cause and prejudice" standard was supported both by considerations of federalism and by the policies underlying the state rule. 433 U.S. at 88–90, 97 S.Ct. at 2507, 2508.

Having outlined the *Fay* and *Sykes* decisions, this Court notes that, in the present case, the effect of Petitioner's voluntary dismissal of his appeal would be problematic under the traditional analysis. First, the Court would have to determine whether voluntary dismissal is a procedural decision such that the *Sykes* "cause and prejudice" test would apply. The "cause and prejudice" test seems inapposite, however, because the voluntary dismissal was made in compliance with procedural rules; thus the "cause for noncompliance" language appears not to fit. If the Court rejected *Sykes,* it would be left with the *Fay* test, whose present validity is questioned.

The Court goes into this detail not merely as an exercise but to point out the difficulties of the *Fay-Sykes* analysis. The confusion that results when one attempts to reconcile these two decisions is further reason to look to the state courts and accept their apparent satisfaction that Petitioner has met the exhaustion requirement.

**5.** The Court is satisfied that the present petition does not present a "mixed claim," *i.e.,* one containing some exhausted claims and some unexhausted claims. The Supreme Court has stated clearly that federal district courts must dismiss a *habeas* petition containing a mixed claim. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *see also Dionne v. Maine,* 633 F.Supp. 30 (D.Me.1986). *Rose v. Lundy,* however, does not require dismissal of the petition now before the Court. In the state post-conviction proceeding, the state court ruled on the merits of two of the claims presented in this petition, clearly satisfying the exhaustion requirement of the federal *habeas* statute. The state court dismissed the two other claims on procedural grounds as errors that could have been raised at trial. *See supra* n. 3. For this Court's present purposes, that dismissal also functions as an adjudication on the merits, because Petitioner has no further available state remedy. Therefore, for federal *habeas* purposes, the petition now before the Court sets out only claims as to which exhaustion is complete. The Court, however, need only discuss those issues which the state court decided on the merits.

**6.** *See supra* n. 3. Petitioner is deemed to have waived errors which were or could have been raised on direct appeal, whether or not such an appeal was taken. 15 M.R.S.A. § 2128(1) (Supp. 1986).

**7.** Me.R.Crim.P. 11. Rule 11 provides for an open-court hearing to receive plea agreements

when it became apparent that the trial judge would not live up to the state's plea bargain. Defendant argues that the judge's statement at sentencing that he would have rejected that proposed sentence supports Defendant's position.

A "Rule 11 hearing" is a proceeding, usually in open court, to inform the court that the parties have reached a plea agreement. *See* Me.R.Crim.P. 11(c). In the present case, the parties agreed that the government would recommend a one-year sentence.[8]

■ A plea agreement that requires the government to recommend a specific sentence is satisfied when the recommendation is made, regardless of whether the court accepts the recommendation. This principle, although not stated explicitly, is implicit in the provisions of Rule 11 taken as a whole. Rule 11(e)(3), captioned "Acceptance or Rejection by the Court of Recommendation Included in Plea Agreement," clearly suggests that the court is not bound by a recommended disposition.[9] Rule 11(e)(4) states the consequences of the state's attorney's failure to comply with a plea agreement of the type specified in Rule 11(e)(1)(A) or 11(e)(1)(B), but makes no provision for failure to comply with the provisions allowing recommended disposition. Thus, Rule 11(e)(4) also implies that the conditions of the plea agreement are

met when the recommendation is made.[10] *See also United States v. Khoury,* 755 F.2d 1071 (1st Cir.1985) (discussing the nonbinding nature of recommended sentences under Federal Rule of Civil Procedure 11(e)(1)(B)).

■ Because the court was not required to accept the government's recommended sentence, the court's failure to do so cannot be a constitutional deprivation. Moreover, the purpose behind an established plea agreement procedure is, at least in part, to ensure that defendants not plead guilty under the false impression of promises made by the government. *See* Me.R. Crim.P. 11(d)–(e). *See also* Notes of Advisory Committee on Federal Rule of Civil Procedure 11, 1966 Amendment. Because the defendant in this case was allowed to withdraw his guilty plea, any impropriety in the proceedings was harmless error. The Court therefore holds that Petitioner's first asserted ground does not state a basis for *habeas corpus* relief.

### 2. Defendant's Sentence Allegedly More Severe Because Right to Jury Trial Exercised

Petitioner's second ground for relief alleges that he received a more severe sentence because he exercised his right to a jury trial. In support of his allegation, Petitioner relies on the fact that his codefendant, who has an extensive felony record,[11] pleaded guilty and received a sen-

---

and to ensure that a defendant's plea of guilty or *nolo contendere* is entered voluntarily.

**8.** Rule 11 provides that, upon a defendant's entering a plea of guilty or *nolo contendere,* any or all of the following will occur:
  (A) The attorney for the state will dismiss other charges;
  (B) The attorney for the state will not oppose the defendant's requested disposition;
  (C) The attorney for the state will recommend a particular disposition; or
  (D) Both sides will recommend a particular disposition.
Me.R.Crim.P. 11(e)(1).

**9.** Rule 11(e)(3) provides, in part, that "[i]f the court accepts the recommendation, it may embody in the judgment and sentence a disposition more favorable to the defendant than that recommended, but it may not embody in the judg-

ment and sentence any disposition less favorable to the defendant than that recommended." This language also suggests that a recommendation is nonbinding on the court.

**10.** Rule 11(e)(4) provides:
  (4) Compliance With Plea Agreement. If the plea agreement is of the type specified in subdivision (e)(1)(A) or (e)(1)(B) of this rule and if the attorney for the state fails to comply with the plea agreement, the court shall afford the defendant the opportunity to withdraw his plea or grant such other relief, including enforcing the plea agreement, as the court deems appropriate.
Me.R.Crim.P. 11(e)(4).

**11.** Petitioner's own record, as shown in the transcript of his sentencing, shows two felonies and eight misdemeanors. Petitioner's *habeas* petition asserts that his co-defendant's record shows twelve felonies and the same number of misdemeanors.

tence of 18 months. Petitioner claims that the court's imposition of a five-year sentence on him, despite his codefendant's exoneration of Petitioner, violated his constitutional right to a jury trial.

It is well established that criminal defendants cannot be punished with a more severe sentence because they exercise the constitutional right to stand trial rather than plead guilty. *Blackmon v. Wainwright*, 608 F.2d 183 (5th Cir.1979) (*per curiam*), *cert. denied*, 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980); *United States v. Araujo*, 539 F.2d 287 (2d Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976); *Hess v. United States*, 496 F.2d 936 (8th Cir.1974); *Baker v. United States*, 412 F.2d 1069 (5th Cir.1969), *cert. denied*, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970). *See generally* Note, *State v. Farnham: The Defendant's Exercise of the Right to Stand Trial as Negative Character Evidence*, 37 Me.L.Rev. 411 (1985) (discussing *State v. Farnham*, 479 A.2d 887 (Me.1984), and its implications).

The First Circuit has held that a state prisoner is entitled to *habeas corpus* relief where the judge's conduct and subsequent sentence create a "reasonable likelihood of vindictiveness." *Longval v. Meachum*, 693 F.2d 236, 237 (1st Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1799, 76 L.Ed.2d 364 (1983) (citing *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). In *Longval*, the trial judge had called in defense counsel and strongly urged a plea of guilty. The same judge who sentenced Longval to 32–40 years on one count and 8–10 years on the second count sentenced Longval's codefendant to a combined total of three years on the two counts. Longval had exercised his right to a jury trial; his codefendant had pleaded guilty. Summarizing its reasoning in ordering issuance of the writ of *habeas corpus*, the First Circuit stated that "the trial judge's apparent attitude, whatever his actual intent, had unconstitutionally created this apprehension [of vindictiveness], and ... this was in no way dissipated by the sentences thereafter imposed." *Longval*, 693 F.2d at 237.

■ Applying this reasoning to the case at bar, the Court does not find conduct sufficient to support *habeas* relief. The comments of the judge presiding at the Rule 11 hearing, although generally disputatious toward the Petitioner,[12] do not create a "reasonable likelihood of vindictiveness." The judge did not actually insert himself into the plea negotiations in a way that created a "plea or else" atmosphere. Furthermore, this is not a case, as in *Longval*, of disparate sentences imposed by the same judge. Dadiego and his codefendant were sentenced by different judges, and Dadiego's sentencing judge testified that he could not explain the lenient sentence given to Dadiego's codefendant.[13] Finally, the Court is satisfied, based on Petitioner's prior record, that a five-year sentence was appropriate in this case.

For the foregoing reasons, the Court *DENIES* the Petition for Writ of *Habeas Corpus*.

So ORDERED.

---

**12.** At the Rule 11 hearing, Justice Broderick expressed some hesitancy at the recommended one-year sentence. After stating that "it seems like a pretty lenient sentence," the Justice initially agreed to "go along with the recommendation." Transcript of Rule 11 Hearing at 10. When the defendant later expressed uncertainty about his guilty plea, the court replied, "What do you want to do, Mr. Dadiego? Make up your mind." *Id.* at 11. Finally, when the defendant inquired about the possibility of getting another lawyer to handle his trial, the court's response was, "I'm sure [the attorney handling the Rule 11 hearing] wouldn't object at all. If you can find another lawyer to take your case, fine, go right ahead.... It's not going to get you a continuance." *Id.* at 12.

**13.** Some courts have apparently held that no constitutional issue for *habeas corpus* review can be presented as long as the sentence imposed was within the statutory limitation. *See, e.g., Reese v. Bara,* 479 F.Supp. 651, 657 & n. 12 (S.D.N.Y.1979). This Court suggests that such a holding is overly broad and ignores cases such as *Longval* that involve vindictive sentencing.