Burton A. WARK

v.

**STATE** of Maine et al.

Supreme Judicial Court of Maine.

June 3, 1970.

David A. Nichols, Camden, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendants.

Before WEBBER, MARDEN, DU-FRESNE, WEATHERBEE and POMEROY, JJ.

WEBBER, Justice.

On appeal from denial of post-conviction relief. In 1965, while represented by counsel, petitioner pleaded guilty to escape from the "Maine State Prison Farm" and was sentenced therefor. He is now confined at the Prison in execution of that sentence and seeks release from that custody.

■ The indictment contained two phrases now challenged by petitioner— "while undergoing lawful imprisonment at the Maine State Prison Farm in Warren" and "did * * * from and out of said Maine State Prison Farm escape and go at large." Petitioner contends there is no such crime as escape from the "Maine State Prison Farm." 34 M.R.S.A. Sec. 751 in 1965 provided in part, "An inmate who escapes from the Prison Farm (earlier referred to in the transfer provision as the 'State Prison Farm at South Warren') * * * shall be guilty of an escape under this Title and shall be punished accordingly." The applicable section in Title 34 was Sec. 710 which by reference provided the penalty.[1] There was no error in 1965 in alleging an escape from the "Maine State Prison Farm in Warren."

■ The indictment, in describing the basis of the "lawful imprisonment" from which petitioner escaped, alleged *inter alia* that he had been sentenced by a "Justice of the Aroostook County Superior Court." The Justice below properly disposed of this alleged infirmity in the indictment by saying, "The words unmistakably meant the Superior Court held in the County of Aroostook. The precise wording is not material."

■ Petitioner contends that the indictment charging escape failed to allege that a warrant for commitment to the State Prison had issued. There is no such requirement. The allegation describing the judgment which produces the lawful detention suffices.

■ Two inadvertent clerical errors were made in the written sentence, one as to the date thereof and the other as to the middle name of the petitioner appearing in the body of the sentence, the correct name having been used in the caption. The true fact in each case is made clear by the record. Post-conviction relief from custody will not be afforded upon a showing of mere harmless and non-prejudicial clerical errors.

■ Petitioner asserts the incompetence of his court appointed counsel. He seems to relate this charge to the voluntariness of his plea on the theory that if his counsel had more thoroughly investigated the legal issues, he would not have advised him to plead guilty. We have dealt with these legal issues above and, as already indicated, find nothing that would deter competent counsel from advising a plea of guilty. Petitioner had adequate opportunity to consult with his counsel. He knew himself to be guilty and tendered his plea voluntarily and understandingly. He does not now suggest any substantial factual or legal defense which was available and not pursued by his counsel. Counsel was aware of the underlying facts of the escape, one of which was that a prison guard had been assaulted during the episode. Understandably, then, the primary concern of both petitioner and his counsel was to obtain

1. It may be noted that when subsequently 34 M.R.S.A., Sec. 751 was amended by P.L.1969, Ch. 505, the name of the "State Prison Farm at South Warren" was changed to "State Prison Minimum Security Unit at South Warren" and a specific reference (for escape penalty) to Sec. 710 was added.

as lenient a sentence as possible under the circumstances. Counsel properly devoted his efforts to this end.

■ Moreover, even if the original sentence had been illegal, it would have been voidable but not void and could not be tested by escape. Collins v. State (1970) (Me.) 262 A.2d 443; see Beaulieu v. State (1965) 161 Me. 248, 211 A.2d 290. Counsel's advice to the petitioner to plead guilty reflected his appreciation of the applicability of this rule of law. As was said in Mayo v. State (1969) (Me.) 258 A.2d 269, 270, "There was no constitutional deprivation in the failure of counsel to discuss with Petitioner these remote legal possibilities and Petitioner's plea of guilty was freely, voluntarily and understandingly given." As to what constitutes the deprivation of the constitutional right to effective representation by counsel, see Bennett v. State (1965) 161 Me. 489, 214 A.2d 667. As to the relationship between advice of counsel and voluntariness of plea, see the very recent cases of Parker v. North Carolina (Opinion May 4, 1970) 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; McMann v. Richardson (Opinion May 4, 1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763.

Petitioner contends that he was denied due process of law and equal protection of the law in that he received a sentence longer than the maximum sentence which could have been imposed upon a female who escaped from her place of incarceration while serving an identical State Prison sentence for an identical offense. Petitioner's argument is that under the statutes applicable on August 1, 1965, the day his escape occurred, a male prisoner escaping from the State Prison was punishable by imprisonment for "any term of years," whereas a female serving a State Prison sentence but confined pursuant to 34 M.R.S.A. Sec. 852 at the "Reformatory for Women" would have been punishable

for escape therefrom "by additional imprisonment in said reformatory for not more than 11 months."[2] Assuming arguendo but without deciding that the female prisoner under these circumstances would have been punishable under 34 M.R.S.A. Sec. 859, we approach the problem as to whether the disparity in maximum sentences violates petitioner's constitutional rights. The petitioner's sentence for escape was for a term of not less than six nor more than twelve years.

We have had no previous occasion to consider the precise issue. In Gosselin, Petr. (1945) 141 Me. 412, 44 A.2d 882, cert. den. Gosselin v. Kelley, 328 U.S. 817, 66 S.Ct. 982, 90 L.Ed. 1599, the equal protection issue was raised by a woman who complained that the maximum limit of an indeterminate sentence to the Reformatory for Women as for a misdemeanor · was three years whereas the maximum limit for confinement at the Reformatory for Men under like circumstances was only two years. Our Court concluded that a legislative determination that a classification as between the sexes for purposes of "reform" was neither unreasonable nor improper. We are aware that in some recent cases, courts faced with the same problem have reached contrary results. United States ex rel. Robinson v. York (1968) D.C.D.Conn., 281 F.Supp. 8; United States ex rel. Sumrell v. York (1968) D.C.D.Conn., 288 F.Supp. 955; Liberti v. York (1968) 28 Conn.Sup. 9, 246 A.2d 106; Commonwealth v. Daniel (1968) 430 Pa. 642, 243 A.2d 400. Whether or not in the light of these cases and their reasoning we would reconsider our holding in *Gosselin* if the same facts were again presented need not concern us here. In the instant case we are dealing with the subject of escape and the distinctive attributes of the sexes become relevant and in our view controlling.

■ It is universally recognized that classifications based upon sex can properly

---

2. The petitioner is here referring, as are we, to the language of 34 M.R.S.A. Secs. 710, 852 and 859 as they stood on August

1, 1965 before the enactment of subsequent amendments not material here.

be made if they meet certain standards. As was said in State v. Heitman (1919) 105 Kan. 139, 181 P. 630, 631, "Hence the decisions are numerous and familiar that equal protection of the law is secured if the law operate in the same way on all who belong in the same class. Classes may not be created arbitrarily or unreasonably, or the principle of equality would be violated. There must be some difference in character, condition, or situation to justify distinction, and this difference must bear a just and proper relation to the proposed classification and regulation; otherwise, the classification is forced and unreal, and greater burdens are, in fact, imposed on some than on others of the same desert." And in our leading case of State v. King (1936) 135 Me. 5, 19, 188 A. 775, 783, the test was stated in these terms, "It must be borne in mind that discrimination alone is not sufficient to render the Act unconstitutional under the Fourteenth Amendment. In order thus to void it, its provisions must either bear no actual relation between the means and the end considering the purpose of the Act or create a discrimination, unwarranted by actual differences, so that the statute is purely arbitrary and effects legislation which unreasonably and without proper distinction favors some persons or classes over others in like circumstances. Either such lack of relationship or the presence of arbitrariness spells unconstitutionality." See Maine Unemployment Compensation Commission v. Androscoggin Junior, Inc. (1940) 137 Me. 154, 160, 16 A.2d 252.

■ When we apply this test to the present circumstances, it is apparent that there is a validating relationship as between the varying behavioral patterns of the two sexes and the statutory distinction as between the sexes. It must be noted at the outset that the statutes have long provided for an exclusively male population at the State Prison, a maximum security institution. Women sentenced to the State Prison have been automatically transferred to and confined in the "Reformatory for Women" (now the Women's Correctional Center) in execution of such sentences. The Legislature could on the basis of long experience conclude that women, even those sentenced to the State Prison for serious offenses, tend for the most part to be more amenable to discipline and custodial regulation than their male counterparts and can therefore be effectively confined in an institution which lacks the high walls, armed guards and security precautions of a prison. By the same token the Legislature could reasonably conclude that the greater physical strength, aggressiveness and disposition toward violent action so frequently displayed by a male prisoner bent on escape from a maximum security institution presents a far greater risk of harm to prison guards and personnel and to the public than is the case when escape is undertaken by a woman confined in an institution designed primarily for reform and rehabilitation. Viewing statutory provisions for punishment as in part a deterrent to criminal conduct, the Legislature could logically and reasonably conclude that a more severe penalty should be imposed upon a male prisoner escaping from the State Prison than upon a woman confined at the "Reformatory" while serving a State Prison sentence who escapes from that institution. We conclude that a classification based on sex under these circumstances is neither arbitrary nor unreasonable but is a proper exercise of legislative discretion which in no way violates the constitutional right to equal protection of the law. The logical basis for such classification is far clearer than was the case in Gosselin.

Appeal denied.

WILLIAMSON, C. J., did not sit.