**Burton Andrew WARK, Petitioner, Appellant,**

v.

**Allan L. ROBBINS, Warden, Maine State Prison, Respondent, Appellee.**

**No. 71–1377.**

United States Court of Appeals, First Circuit.

Heard Feb. 23, 1972.

Decided April 12, 1972.

David A. Nichols, Camden, Me., for appellant.

Charles R. Larouche, Asst. Atty. Gen., for appellee.

Before ALDRICH, Chief Judge, McENTREE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

With a deft touch, fate finds us deciding our first equal protection case since Congressional passage of the Equal Rights Amendment at the behest of a male seeking the same rights as those bestowed on females. In this case, coming to us on appeal from denial of a petition for habeas corpus by the district court, a Maine prisoner who escaped from State Prison and thereafter received a six to twelve year sentence (which could have been "for any term of years") claims that he is deprived of equal protection of the law in that a female felon similarly sentenced to State Prison, but sent to the Women's Reform-

atory, could at most be sentenced for eleven months for the crime of escape from the latter institution.[1]

The petitioner first sought post-conviction habeas relief in the Maine Superior Court, including his present claim among a number of others. The Single Justice, in dismissing the petition, simply held: "The penalty [for escape] turns on the institution from which the prisoner escapes." On appeal, the Supreme Judicial Court, assuming that the maximum escape penalty for women sentenced to the State Prison but sent to the Women's Reformatory was eleven months, dealt with the issue as one posing a statutory distinction as between the sexes and held that there was "a validating relationship as between the varying behavioral patterns of the two sexes. . . ." Wark v. State, 266 A. 2d 62, 65 (Me.1970). It noted at the outset that the statutes had "long provided for an exclusively male population at the State Prison, a maximum security institution", id. at 65, and that the legislature could "on the basis of long experience" conclude that even women sentenced to State Prison for serious offenses could be "effectively confined in an institution which lacks the high walls, armed guards and security precautions of a prison." It went on to hold:

"By the same token the Legislature could reasonably conclude that the greater physical strength, aggressiveness and disposition toward violent action so frequently displayed by a male prisoner bent on escape from a maximum security institution presents a far greater risk of harm to prison guards and personnel and to the pub-

lic than is the case when escape is undertaken by a woman confined in an institution designed primarily for reform and rehabilitation. Viewing statutory provisions for punishment as in part a deterrent to criminal conduct, the Legislature could logically and reasonably conclude that a more severe penalty should be imposed upon a male prisoner escaping from the State Prison than upon a woman confined at the 'Reformatory' while serving a State Prison sentence who escapes from that institution." Id. at 65.[2]

The district court adopted this reasoning, adding, "In the view of this Court, a classification based not merely upon the distinctive attributes of the sexes, but more importantly upon the character of the institution from which the prisoner escapes, is neither arbitrary nor unreasonable, and in no way a denial of Equal Protection."

In all of the proceedings below, with the possible exception of those before the Single Justice, the fact that a sex-based classification existed was accepted and the court's focus was the adequacy of the state's justification. This is also the posture in which the case has been argued to us. Accordingly, we have been presented with the wide-ranging choice of standard of review which landmark cases in this fluid area suggest: the conventional, relaxed review customary in reviewing economic regulations, McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960); the more rigorous review, calling for a justification of a suspect classification through proof of a compelling reason therefor, Loving v. Virginia, 388 U.S. 1,

1. This duality of treatment is similar to that encountered in Massachusetts, where an escape from the Massachusetts Correctional Institution at Framingham (for women) is punishable by a term not exceeding two years, 268 Mass.G.L. § 16A, while an escape from other penal institutions is punishable by a term of not more than ten years, 268 Mass.G.L. § 16. On the other hand, we note that no such disparity appears in the statutes

of the other states which we have examined, the American Law Institute's Proposed Official Draft of the Model Penal Code (1962), the Report of the National Commission on Reform of Federal Criminal Laws (1971), or in 18 U.S.C. § 751.

2. Certiorari was denied sub nom. Wark v. Maine, 400 U.S. 952, 91 S.Ct. 255, 27 L.Ed.2d 259 (1970) (Justices Harlan, Stewart and Blackmun dissenting).

87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967);[3] or something in between.[4]

Before entering such an analytical thicket, we face a preliminary and decisive difficulty. The very concept of a classification, the rationality of which must be justified under some standard of review, implies that it, the classification, is the only barrier to plaintiff's being treated like others. That is, *but for* the fact that a plaintiff is a black, a female, a poor person, a non-resident, he or she could vote, be hired, go to a quality school, qualify for welfare benefits, have a lawyer, etc. Here, there are two "but fors". Plaintiff differs from a female felon who escapes, not only in sex but in the fact that he escapes from a different institution.

Petitioner has not challenged the constitutionality of Maine's system of confining male and female felons in different institutions. Such a claim would embrace a broader range of disparate treatment of the sexes. Whatever might be the merits of such a case, *but see* Williams v. McNair, 401 U.S. 951, 91 S. Ct. 976, 28 L.Ed.2d 235 (1971),[5] that was not the case presented to either the state or the district court. Our question, therefore, is whether a female state prisoner lodged in the Women's Reformatory and a male inmate of the State Prison are "similarly circumstanced". On this threshold issue we think that a plaintiff has some burden to establish the similarity.

There is no evidence in the record as to the nature of these two institutions. Our only sources of information, on the present record, are the statutes. The only provision of the law regarding females sentenced to State Prison in effect at the time pertinent to this case was

3. A federal district court in United States ex rel. Robinson v. York, 281 F.Supp. 8 (D.Conn.1968), has recently employed the suspect classification doctrine as a basis for striking down a statutory scheme of heavier penalties for female than for male misdemeanants. *See also* Lamb v. Brown, 456 F.2d 18 (10th Cir. 1972); Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 339–340, 485 P.2d 529, 539–540 (1971) ("sex should be treated as suspect"); *cf.* Commonwealth v. Daniel, 430 Pa. 642, 243 A.2d 400 (1968). *See generally* Note, Developments in the Law-Equal Protection, 82 Harv.L.Rev. 1065, 1087–1120, 1124–27 (1969); Note, Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv.L.Rev. 1499, 1507–16 (1971); Brown, et al., The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.J. 871, 875–82 (1971).

4. This intermediate approach is arguably suggested by Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the first case in which the Court has struck down a sex-based classification. In invalidating a mandatory provision of the Idaho probate code giving men a preference over women in appointments as administrators of estates, the Court quoted from Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920), in saying that a classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation", 404 U.S. at 76, 40 S.Ct. at 561. On the one hand it is noteworthy that the Court has moved away from its readiness to conceive any reasonable basis for differentiating the sexes, as demonstrated in Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961) [upholding a Florida statute relieving women from involuntary jury service], but on the other it is equally apparent that the Court had ample opportunity to hold sex a "suspect classification" but did not do so. These observations, particularly in a case involving such a substantial interest as that of appellant in being subjected to an escape penalty free of extraneous sex-based considerations, would argue for a requirement that the state must do more than allow a court to speculate and must in fact demonstrate a substantial relation to a legitimate state objective. *See* Cox, The Supreme Court, 1965 Term, Foreword: Constitutional Adjudication and the Promotion of Human Rights, 80 Harv.L.Rev. 91, 95 (1966). *See also* Note, Developments in the Law-Equal Protection, 82 Harv.L.Rev. 1065, 1120–21, 1127–31 (1969).

5. This was an affirmance, without opinion, of the decision of a three-judge court, reported in 316 F.Supp. 134 (D.S.C. 1970), upholding as a "reasonable classification" the exclusion of males from state-supported Winthrop College in South Carolina.

that "the department shall maintain quarters at the Reformatory for Women for the incarceration of all women sentenced to the State Prison" and that they "shall be subject to all rules governing persons sentenced to the State Prison." 34 M.R.S.A. § 852.[6] From this, petitioner argues that it is not reasonable to treat one institution as correctional and the other as penal, at least for men and women with state prison sentences. Indeed, he argues that to treat male and female escapees differently is "every bit as arbitrary as preferring the prisoner in Dormitory A over the prisoner in Dormitory B."

We concede for the purposes of this case that the record does not support any reliance on one institution being "correctional" and the other "penal". Notwithstanding, a conclusion that the State Prison and the Women's Reformatory are capable of being equated in terms of their security environment is not suggested by the panoply of statutes uniquely directed to men confined at the State Prison. Duncan v. Maine, 158 Me. 265, 183 A.2d 209, cert. denied, 371 U.S. 867, 83 S.Ct. 129, 9 L.Ed.2d 104 (1962). In toto they suggest what is meant by a "maximum security" institution. The then relevant statutes authorized the possession and use of arms in preventing escape, 34 M.R.S.A. § 558; gave Prison employees the power of sheriffs, when authorized, in apprehending escapees, 34 M.R.S.A. § 591; provided heavy penalties for Prison officers suffering or aiding in escapes, 34 M.R.S.A. § 594; authorized the use of weapons against a convict resisting an officer, 34 M.R.S.A. § 595; authorized solitary confinement, 34 M.R.S.A. § 711; prescribed a sentence of up to 20 years for one aiding a convict's escape, 34 M.R.S.A. § 753, for one harboring an escaped convict, a sentence up to that originally imposed on the convict, 34 M.R.S.A. § 754, and, for one delivering articles to convicts without permission, a sentence of up to 2 years, 34 M.R.S.A. § 755.

While it is conceivable that the reference in 34 M.R.S.A. § 852 to "quarters" for state prisoners in the Women's Reformatory and to "all rules governing persons sentenced to the State Prison" means that the security environment of a woman prisoner is as complete as that in the State Prison, we are not willing to assume so. *See* Duncan v. Maine, *supra.* Indeed, so to assume would in effect place the burden on the state of proving dissimilarity of circumstances. Viewing plaintiff as having the burden of establishing, prima facie, a similarity, we hold that he has not carried it.[7] On this record we think it likely that one venturing escape from the State Prison, with the attendant risks of violence and danger to inmates, prison personnel, and the outside community is not similarly circumstanced to one venturing escape from the Women's Reformatory. It follows that the crime of escape from the Women's Reformatory described in 34 M.R.S.A. § 859, and that of escape from

6. This was repealed in 1967. Present section 851 merely lists females sentenced to State Prison as one of the categories of the Women's Correctional Center (formerly the Women's Reformatory) inmates, to be "confined in accordance with the orders or sentences of the courts and the rules and regulations of the center applicable to each such category." No reference to "quarters" remains.

7. We recognize that we have concentrated on only one element—the security environment and risks attending escape therefrom—and this in connection with the threshold issue of determining whether petitioner and a female felon escapee are similarly circumstanced. This analysis admittedly differs from that of other courts considering this case, which have concentrated on the quest for justification of differential treatment, basing such justification on several factors—behavioral differences of the sexes, the difference between penal and correctional institutions, and the difference in security environment. This difference in focus does not appear to us to require remand for the purpose of taking evidence on security aspects and risks. Counsel for petitioner has demonstrated his resourcefulness; we assume that he purposely confined his reliance to the language of 34 M.R.S.A. § 852.

the State Prison described in 34 M.R.S.A. § 710, are not merely nominally—and penally—distinct, but that they respond to substantially different circumstances.

We therefore affirm.