Dorothy Ann WHITE,
Plaintiff-Appellee,

v.

John FLEMING, City Attorney for the
City of Milwaukee, Wisconsin,
Defendant-Appellant.

No. 74–1592.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1975.

Decided July 24, 1975.

Joseph H. McGinn, Asst. City Atty., Milwaukee, Wis., for defendant-appellant.

Joseph P. Balistrieri, Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT and TONE, Circuit Judges, and PERRY,* Senior District Judge.

TONE, Circuit Judge.

Before us in this appeal is the constitutionality of a Milwaukee ordinance which prohibits female employees of "Class B" taverns from sitting with male patrons or from sitting or standing at or behind the bar. The District Court held the ordinance unconstitutional. We affirm the judgment.

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

In her complaint plaintiff alleges that she is by occupation an entertainer and that she was "charged with the offense of sitting with a male patron in violation of section 90–25 of the Milwaukee Code of Ordinances." Naming as defendants the Milwaukee City Attorney, the state judge before whom her prosecution was pending, and the Milwaukee Police Department, she prayed for injunctive relief against the pending prosecution and for declaratory relief adjudicating the ordinance invalid.

■ The District Court denied temporary injunctive relief,[1] following which the state prosecution came on for trial and the charge against plaintiff was dismissed. Defendants' subsequent motion to dismiss this proceeding based on mootness was denied since the claim for declaratory relief remained. *White v. Fleming,* 344 F.Supp. 295 (E.D.Wis.1972).

Subsequently the court ruled on defendants' motion to dismiss addressed to the merits, granting the motion as to the Milwaukee Police Department on the authority of *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and denying the motion as to the other defendants. Although the plaintiff had not moved for summary judgment, the court granted summary judgment in her favor, relying, *inter alia,* on *Proctor & Gamble Independent Union of Port Ivory, N. Y. v. Proctor & Gamble Mfg. Co.,* 312 F.2d 181 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963), and *Pitts v. Knowles,* 339 F.Supp. 1183 (W.D.Wis. 1972), *aff'd,* 478 F.2d 1405 (7th Cir. 1973), as authority for that procedure. The court declared the ordinance invalid under the equal protection clause of the fourteenth amendment and enjoined defendants from enforcing it against plaintiff. *White v. Fleming,* 374 F.Supp. 267 (E.D.Wis.1974).

The ordinance, which the District Court held invalid in its entirety, applies to female entertainers, waitresses, and other female employees. Although plaintiff is solely an entertainer and is therefore affected only by the provisions of the ordinance applicable to entertainers, the provisions covering other employees are substantially the same and are "so interwoven with the system held invalid that [they] cannot stand alone." *Dorchy v. Kansas,* 264 U.S. 286, 290, 44 S.Ct. 323, 324, 68 L.Ed. 686 (1924); see also *United States v. Raines,* 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). Consequently, the ordinance must stand or fall in its entirety.

The ordinance prohibits female employees from standing or sitting "at or behind the bar, except for the specific purpose of receiving food or drink orders for delivery to patrons who are not at the bar" and from sitting with male patrons anywhere on the premises. Exempted are licensed female bartenders, female employees who are members of the immediate family and household of the licensee, and "female entertainers while actually performing in an area behind the bar which is ordinarily used for back-bar entertainment."

Until recent years the separate treatment of women in the regulation of liquor dispensing establishments was uniformly held to be a valid classification under the equal protection clause of the fourteenth amendment. Justice Frankfurter, speaking for the Supreme Court in 1948 in *Goesaert v. Cleary,* 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163, sustained a Michigan statute which in effect prohibited any woman from serving as a bartender in a city having a population of 50,000 or more unless she was "the wife or daughter of the male owner." He said:

"The Fourteenth Amendment did not tear history up by the roots, and the regulation of the liquor traffic is one of the oldest and most untrammeled of legislative powers. Michigan could, beyond question, forbid all women

---

1. The record does not disclose why this action was not dismissed at that stage on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). After the dismissal of the state charges, of course, *Younger* no longer required dismissal of this action.

from working behind a bar. This is so despite the vast changes in the social and legal position of women. The fact that women may now have achieved the virtues that men have long claimed as their prerogatives and now indulge in vices that men have long practiced, does not preclude the States from drawing a sharp line between the sexes, certainly, in such matters as the regulation of the liquor traffic. See the Twenty-First Amendment and *Carter v. Virginia,* 321 U.S. 131 [64 S.Ct. 464, 88 L.Ed. 605]. The Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards." *Id.* 335 U.S. at 465–466, 69 S.Ct. at 199.

The Court held also that the subclassification of women whose husbands or fathers owned a bar, as against other women, was similarly valid:

"Michigan evidently believes that the oversight assured through ownership of a bar by a barmaid's husband or father minimizes hazards that may confront a barmaid without such protecting oversight. This Court is certainly not in a position to gainsay such belief by the Michigan legislature. If it is entertainable, as we think it is, Michigan has not violated its duty to afford equal protection of its laws." *Id.* at 466, 69 S.Ct. at 200.

Mr. Justice Rutledge, joined by Justices Douglas and Murphy, dissented on the ground that the statute arbitrarily discriminated between male and female owners of liquor establishments, allowing the male owner to employ his wife or daughter as a barmaid, even though he himself was always absent, but preventing the female owner from employing her daughter or working herself as a barmaid, even if a male employee was always present on the premises to keep order. This analysis, thought the dissenters, showed that the statute was not "motivated by a legislative solicitude for the moral and physical well-being of women who, but for the law, would be employed as barmaids." *Id.* at 468, 69 S.Ct. at 201.

The dissenting opinion in *Goesaert* was perhaps one of the earliest judicial refusals to accept uncritically the stereotyping of women which had so long prevailed in the application of the equal protection clause. It was to be many years, however, before the dissenters' approach found much favor in the courts. State courts and lower federal courts before and after *Goesaert v. Cleary* sustained, without much critical examination and usually based upon the traditional sex-role of women (see *Women's Liberation Union of Rhode Island v. Israel,* 379 F.Supp. 44, 50–51 (D.R.I.1974)), statutes which forbade the sale of liquor to women, the employment of women, and even the presence of women in liquor establishments. See, e. g., *Henson v. City of Chicago,* 415 Ill. 564, 114 N.E.2d 778 (1953); *City of Milwaukee v. Piscuine,* 18 Wis.2d 599, 119 N.W.2d 442 (1963) (upholding the ordinance challenged in the case at bar); Annot., 172 A.L.R. 620 (1948); Annot., 9 A.L.R.2d 541 (1950); see also *Women's Liberation Union, supra,* 379 F.Supp. at 50.

In recent years, the changing attitudes concerning women's roles in society have been reflected not only in action by Congress (see, for example, the Equal Pay Act of 1963, 29 U.S.C. § 206(d) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2]) but in court decisions as well. While the Supreme Court has not yet overruled *Goesaert v. Cleary,* the judicial and social climate has changed since that case was decided. This court showed, arguably, a disposition narrowly to limit *Goesaert* to its facts in holding that a complaint challenging Chicago's barmaid ordinance, which the district court had dismissed on the authority of *Goesaert,* presented sub-

---

2. We omit reference to the Equal Rights Amendment, H.R.J. Res. No. 208, 92d Cong. 2d Sess. (1972), since it has not been ratified as yet.

stantial constitutional questions under the equal protection clause and, in view of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., the supremacy clause.[3] *McCrimmon v. Daley,* 418 F.2d 366, 369–371 (7th Cir. 1969). And at least two district courts have recently held invalid state regulation of the conduct of women in liquor establishments which would surely have been thought to be controlled by *Goesaert* not many years ago. *Daugherty v. Daley,* 370 F.Supp. 338, 340–341 (N.D.Ill.1974) (three-judge court); *Women's Liberation Union, supra,* 379 F.Supp. 44. Thus, while we would not be free to disregard *Goesaert* in a case from which it was indistinguishable, *McCrimmon v. Daley, supra,* 418 F.2d at 369, neither do we feel bound to extend its holding in light of the developments of recent years in the law of equal protection and the rights of women. Cf. *Foster v. Sparks,* 506 F.2d 805, 827 (5th Cir. 1975).

■ It is true that *Goesaert* was grounded in part upon the broad powers of the state to regulate the traffic in liquor under the twenty-first amendment, and the Court has recently reaffirmed those powers in *California v. La-Rue,* 409 U.S. 109, 114–115, 118–119, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), which upheld a California Department of Alcoholic Beverage Control regulation prohibiting explicit sexual entertainment in bars. The subject of the ordinance here in question is, once again, liquor dispensing establishments. However, as the Supreme Court recognized in *LaRue,* 409 U.S. at 115, 93 S.Ct. at 395, this is only one circumstance entitled to weight: " . . . the case for upholding state regulation in the area covered by the Twenty-first Amendment is undoubtedly strengthened" by the amendment, id.,

but other constitutional provisions are not rendered inapplicable. It is still necessary to consider and apply the appropriate equal protection test, see *Daugherty v. Daley, supra,* 370 F.Supp. at 340, and this is where we now proceed.

The Supreme Court has rejected classifications based on sex which do not bear a rational relationship to the objective the regulation is designed to achieve. *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). In *Reed* a unanimous Court, speaking through the Chief Justice, held invalid under the equal protection clause an Idaho statute which gave preference to men as administrators of decedents' estates. In *Frontiero* sex-based classifications of members of the uniformed services for purposes of dependents' benefits were held to be unjustifiably discriminatory. While no opinion in *Frontiero* commanded a majority, all justices except Mr. Justice Rehnquist, who dissented, relied on *Reed.* Justices Brennan, Douglas, White, and Marshall believed that "classifications based upon sex, like classifications based upon race, alienage, and national origin, are inherently suspect and must therefore be subjected to close judicial scrutiny" and found "at least implicit support for such an approach in" *Reed.* 411 U.S. at 682, 93 S.Ct. at 1768 (footnotes omitted). See also Mr. Justice Brennan's dissent, joined by Justices Douglas and Marshall, in *Geduldig v. Aiello,* 417 U.S. 484, 497, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). The other members of the Court, however, are uncommitted on the question of whether classifications based on sex are inherently suspect.[4] Subjecting the Wisconsin classification to a strict scrutiny test would

---

3. Plaintiff in the case at bar does not assert the Civil Rights Act as a basis for holding the challenged Milwaukee ordinance invalid.

4. In concurring in the judgment in *Frontiero,* Mr. Justice Powell, joined by the Chief Justice and Mr. Justice Blackmun, found it unnecessary to decide whether classifications based on

sex are inherently suspect and thought it inappropriate to reach that question in light of the pendency before state legislatures of the proposed Equal Rights Amendment, "which if adopted will resolve the substance of this precise question . . . ." 411 U.S. at 692, 93 S.Ct. at 1773.

therefore be inappropriate,[5] and it thus becomes necessary to examine the breadth of less rigorous standards.

■ The minimal requirement for the validity of state statutes and city ordinances under the equal protection clause is that the statutory classification bear some rational relationship to a legitimate state purpose. *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Morey v. Doud,* 354 U.S. 457, 465–466, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489–490, 75 S.Ct. 461, 99 L.Ed. 563 (1955). How far a court will go today in attributing to a legislative classification a purpose which would support its validity depends more perhaps upon the court's devotion to principles of judicial restraint than upon any set rules clearly articulated by the Supreme Court. In *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), for example, the Court said that a classification must be sustained "if any state of facts reasonably may be conceived to justify it." This might be considered the traditional approach for use in ordinary cases in which state regulations are challenged under the equal protection clause and has been followed in a large number of cases. See, *e. g., Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Hoyt v. Florida,* 368 U.S. 57, 59–65, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); *Two Guys From Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 590–592, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528–529, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Goesaert v. Cleary, supra.* See also *Developments in the Law—Equal Protection,* 82 Harv.L. Rev. 1065, 1076–1085 (1969). Until the Supreme Court's recent decision in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), this approach, which of necessity accords great deference to legislative choices, appeared

to be losing momentum. The Court, in a number of cases dealing with classifications it did not declare to be inherently suspect, was nevertheless less willing than it formerly had been to ascribe legitimate purposes to the legislative body, and thus seemed to subject the classifications in question to a review of somewhat greater intensity. See, in addition to *Reed and Frontiero, Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 651 and n. 2, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (Powell, J., concurring); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 477 *et seq.,* 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *cf. Weber v. Aetna Casualty & Surety Co., supra,* 406 U.S. at 173–175, 92 S.Ct. 1400; see also Gunther, *Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L.Rev. 1, 33–37 (1972). In the recent *Salfi* decision, the Court reaffirmed the traditional rational basis test as applicable in disposing of constitutional challenges to social welfare legislation. See also *Village of Belle Terre v. Boraas,* 416 U.S. 1, 95 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Compare *Jiminez v. Weinberger,* 417 U.S. 628, 632–637, 95 S.Ct. 2496, 41 L.Ed.2d 363 and (Rehnquist, J., dissenting) 638–641, 95 S.Ct. 2496 (1974).

In the area of sex classifications, which as we noted above, four members of the Court regard as "inherently suspect," a number of lower courts have viewed *Reed* and *Frontiero* as indicating that a less deferential test is to be applied. The Fourth Circuit, in fact, based upon its interpretation of *Reed,* has gone so far as to recognize a standard which lies between the rational basis and compelling interest tests for use in sex classification cases, the "intermediate" test being whether there is a "fair and substantial" relation between the basis of the classification and the object of the classification. *Eslinger v. Thomas,* 476

---

**5.** But see *Daugherty v. Daley, supra,* 370 F.Supp. at 340, in which *Reed* was viewed as supporting the proposition that a classification based on sex is subject to close scrutiny.

F.2d 225, 230–231 (4th Cir. 1973).[6] The Ninth Circuit has interpreted *Reed* and *Frontiero* as suggesting "that a classification based upon sex will have to be justified by more than the traditional 'rational' connection between the classification and some valid legislative purpose." *Berkelman v. San Francisco Unified School Dist.,* 501 F.2d 1264, 1269 (9th Cir. 1974). See also *Wark v. Robbins,* 458 F.2d 1295, 1297 n. 4 (1st Cir. 1972).

The Second Circuit, while applying a rational basis standard to hold a maternity leave regulation invalid on the ground of equal protection, found evidence in recent Supreme Court decisions "that rational basis scrutiny is not so deferential a standard of review as had been previously and generally supposed." *Green v. Waterford Board of Education,* 2 Cir., 473 F.2d 629, 633 (1973).[7] More recently the Second Circuit, in a case that did not involve a classification based on sex, concluded that even though *Green* had been cited with approval in *LaFleur,* 414 U.S. at 642, 94 S.Ct. 791, the Supreme Court's application of a rational basis test in *Village of Belle Terre v. Boraas, supra,* reversing the Second Circuit's decision in that case which had applied a less deferential test, *Boraas v. Village of Belle Terre,* 476 F.2d 806, 814 (2d Cir. 1973), rendered it "unclear whether the Court now accepts an intermediate form of equal protection analysis." *Citizens Committee for Faraday Wood v. Lindsay,* 507 F.2d 1065, 1068 n. 5 (2d Cir. 1974), *cert. denied,* 421

6. The words "fair and substantial relation" in *Reed,* 404 U.S. at 76, 92 S.Ct. 251, were in turn taken from, and attributed to, *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920), in which the Court, with Justices Brandeis and Holmes dissenting, held invalid under the equal protection clause a classification of property for purposes of taxation. That kind of classification would of course be subject to the rational basis test, and in fact, later in the same paragraph in which it quotes from *Royster,* the Court in *Reed* states that the test it is applying is "whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced by the operation of" the challenged statute. 404 U.S. at 76, 92 S.Ct. at 254. Thus the case for an "intermediate" test based on a reading of *Reed* alone is not strong.

   The court in *Eslinger* cites in support of its "intermediate" test *Wark v. Robbins,* 458 F.2d 1295, 1297 n. 4 (1st Cir. 1972), which also relies on *Reed,* and *Green v. Waterford Board of Education,* 473 F.2d 629 (2d Cir. 1973). *Green* does not conclude that there is an intermediate test for sex classifications but, as pointed out in the text above and note 7, *infra,* finds indications that the rational basis test is changing in the direction of less deference to the legislative judgment.

7. Judge Feinberg, writing for the court, referred to two cases which had "apparently narrowed the linguistic gap" between the strict scrutiny and rational basis standards: In the first of these, *Weber v. Aetna Casualty & Surety Co., supra,* 406 U.S. at 173, 92 S.Ct. 1400, the Court, in holding that a state work-

men's compensation law discriminated against certain illegitimate children, said that the "essential inquiry" in both "rational relationship" and "strict scrutiny" equal protection cases both inevitably a dual one: "What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?" Mr. Justice Rehnquist in dissent calls this a "hybrid standard." 406 U.S. at 181, 92 S.Ct. at 1409. The second case, *Police Department v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), involved first amendment interests but the Court said, citing *Reed, Weber,* and *Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (which applied the compelling interest test to durational residence requirements for voting), "as in all equal protection cases, however, the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment."

   Judge Feinberg also noted that "the Court seems far less willing to speculate as to what unexpressed legitimate state purposes may be rationally furthered by a challenged statutory classification," comparing *McGowan v. Maryland, supra,* 366 U.S. at 425–426, 81 S.Ct. 1101, with the discussion in *Gunther, supra,* 86 Harv.L.Rev. at 33, of *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). Finally Judge Feinberg found a "slightly, but perceptibly, more rigorous" definition of "what constitutes the necessary rational relationship between a classification and a legitimate governmental interest," in *Reed* and *Weber.* He also cited, with a *"cf."* signal *Eisenstadt v. Baird, supra,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349.

U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975).

Two other Supreme Court cases must also be considered. *Eisenstadt v. Baird, supra,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349, held that the different treatment of married and unmarried persons under a Massachusetts statute regulating the sale of contraceptives violated equal protection. Mr Justice Brennan, speaking for the Court, quoted the statement from *Reed* which has led some courts to conclude that there is an intermediate standard (see note 6, *supra*) and then said:

"The question for our determination in this case is whether there is some ground of difference that rationally explains the different treatment accorded married and unmarried persons [under the challenged Massachusetts statutes]." *Id.* at 447, 92 S.Ct. at 1035.

In *Geduldig v. Aiello, supra,* 417 U.S. at 494–495, 94 S.Ct. 2485, the Court held the exclusion of pregnancy from the disabilities covered by workmen's compensation not to be violative of the equal protection clause. The dissenters argued that the classification was sex-based and should be subjected to the strict scrutiny test and invalidated, *id.* at 497–505, 94 S.Ct. 2485, but the majority, speaking through Mr. Justice Stewart, did not view the classification as sex-based and, in a footnote, distinguished *Reed* and *Frontiero* as "involving discrimination based upon gender as such." *Id.* at 496 n. 20, 94 S.Ct. at 2492.

■ The precise terms of the test ultimately to be evolved by the Supreme Court for judging the validity of a classification based on sex cannot now be determined. But whatever formulation the Court may ultimately adopt, it can at least be divined from the authorities discussed above that we may not accept a classification based solely on sex without further inquiry as to whether the differences between men and women rationally justify the classification.

■ The interest sought to be advanced by the ordinance before us, judging from its terms, from the Wisconsin Supreme Court's decision upholding it (*City of Milwaukee v. Piscuine, supra,* 18 Wis.2d at 608–613, 119 N.W.2d at 447–450), and from the history and legal literature cited above pertaining to similar regulations,[8] is the protection of employ-

---

8. Traditionally, the courts have not required that the classification be supported by legislatively articulated reasons or findings. See, e. g., *McGowan v. Maryland, supra,* 366 U.S. at 426, 81 S.Ct. 1101; *Dandridge v. Williams, supra,* 397 U.S. at 485, 90 S.Ct. 1153. In *Rodriguez, supra,* 411 U.S. at 17, 93 S.Ct. 1278, however, Mr. Justice Powell, for the Court, spoke of the necessity that the classification further "some legitimate, articulated, state purpose." Compare his concurring opinion in *LaFleur, supra,* 414 U.S. at 653 n. 2, 94 S.Ct. 791, 803: " . . . some legitimate articulated *or obvious* state interest." (Emphasis added.) See also Gunther, *supra,* 86 Harv.L.Rev. at 44–46. Yet the Court has never expressly questioned the traditional standard of whether "any state of facts reasonably may be conceived to justify it," *McGowan v. Maryland, supra,* 366 U.S. at 426, 81 S.Ct. at 1105, or addressed itself to the difference between that standard and an "articulated" or "articulated or obvious" standard. While the state legislative body's articulation of its purpose, or making a record of the legislative history of the proposal (as in *California v. LaRue, supra,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342), would undoubtedly be useful to the court, it is probably safe to say that the great majority of legislative classifications in the 50 states are not so supported. Requiring that the state's purpose be articulated could lead to the curious result that substantially the same regulation adopted in two states would be valid in one state, where the legislative body had articulated. its purpose, but not in the other state, where no purpose was articulated. We assume for purposes of the case at bar that the purpose need not be articulated. If it is necessary that the purpose be obvious, as opposed to reasonably conceivable, we believe that standard is met here. As for articulation of the justification for a classification by the proponent of the regulation and the view that a court should limit its consideration to reasons advanced before it, see Tribe, *Structural Due Process,* 10 Harv.Civ.Rts.Civ.Lib.L.Rev. 269, 298–301 (1975), who construes Mr. Justice Powell's reference to articulation to mean articulation by counsel. In the case before us, the purpose we attribute to the ordinance is suggested by counsel's quotation from the *Piscuine* case.

ees, customers, and society generally against promiscuous sexual activity that is thought likely to follow from contacts between men and women where liquor is sold by the drink.[9] The classification chosen to further that interest is female employees versus male employees. A "ground of difference that rationally explains the different treatment" of men and women by the ordinance (*Eisenstadt v. Baird, supra,* 405 U.S. at 447, 92 S.Ct. 1029) would exist only if it could rationally be assumed that a female employee is more likely than a male employee to engage in promiscuous sexual contacts with customers of the opposite sex. While a legislative body may draw on history for an assumption that most of those who will engage in prostitution will be women, and perhaps for an assumption that prostitution and other promiscuous sexual activities sometimes stem from contacts made in bars, those assumptions do not in logic or experience support broader assumptions about all or most women who work in bars or the relative proclivities of men and women who work in, or are patrons of, bars. We think it is impermissible under the equal protection clause to classify on the basis of stereotyped assumptions concerning propensities thought to exist in some members of a given sex. This is not necessarily to say that sex is an inherently suspect classification, a point which the Supreme Court has yet to decide. There are anatomical and physiological differences between the sexes that may justify classification for certain purposes. But these differences hardly include a greater or lesser propensity for a given kind of conduct.

■ We hold, therefore, that the provisions of the Milwaukee ordinance in issue here are in violation of the equal protection clause.

Affirmed.

---

9. Another inferable purpose of the ordinance at bar, *viz.,* protecting male patrons from having money extracted from them by female employees soliciting drinks, see *Daugherty v. Da-*

*ley, supra,* 370 F.Supp. 338, is the subject of another Milwaukee ordinance, according to *City of Milwaukee v. Piscuine, supra,* 18 Wis.2d at 612, 119 N.W.2d at 449.