STATE of Maine

v.

Charles EMERY and George W. Swan.

Supreme Judicial Court of Maine.

May 12, 1976.

---

Michael D. Seitzinger, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, Galen P. LaGassey, County Atty., Rockland, for plaintiff.

Grossman, Faber & Miller, P.A. by Edward B. Miller, Rockland, for Charles Emery.

Harmon & Jones by John J. Sanford, Camden, for George W. Swan.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The defendants were tried jointly on separate indictments for escape from the Maine State Prison (34 M.R.S.A. § 710) and a Knox County jury returned verdicts of guilty. The cases were consolidated for purposes of these appeals, which we deny.

## I

The appellants claim that they have been denied equal protection of the law since they received sentences which are in excess of the maximum sentence that could be imposed on a woman who escaped incarceration while serving a State Prison sentence.

34 M.R.S.A. § 710[1] provides in part:

"If a convict, sentenced to the State 'Prison for life or for a limited term of years . . . breaks or escapes *therefrom*, or forcibly attempts to do so, he may be punished by confinement to hard labor *for any term of years* . . .." (Emphasis supplied.)

Although men and women are equally subject to be *sentenced* to the State Prison, 34 M.R.S.A. § 851 provides that all women so *sentenced* shall be committed directly to the Women's Correctional Center in execution thereof. Women who are committed pursuant to § 851 are defined as "prisoners" by § 851-A(3), thereby distinguishing them from "inmates" otherwise committed to the Center. 34 M.R.S.A. § 859 establishes the penalties for escape and attempted escape from the Center, providing different punishments depending upon whether a woman is a "prisoner" or an "inmate." A "prisoner" who is convicted of escape from the Center is subject to be sentenced to the State Prison (although the sentence is actually served in the Center) for "an additional term of not less than one year nor more than 5 years." The defendants in this case were each sentenced to serve not less than four years and not more than ten years in the State Prison and were therefore punished more severely than the

---

1. The defendants allegedly escaped from the State Prison sometime during the evening of December 30, 1973, or early morning of December 31, 1973. Our references will be to the statutes in effect at that time.

law permits in the case of a woman "prisoner" who escapes from the Center while there serving a State Prison sentence.

 Although the defendants urge us to reconsider the "validating relationship" test discussed in *Wark v. State*, 266 A.2d 62 (Me.1970), *cert. denied*, 400 U.S. 952, 91 S.Ct. 255, 27 L.Ed.2d 259 (1970), the facts before us make it inappropriate to do so since the defendants here have failed to meet the threshold burden that they are "similarly circumstanced" to women who escape incarceration while serving State Prison sentences in the Women's Correctional Center. *See Wark v. Robbins*, 458 F.2d 1295 (1st Cir. 1972). The defendants *do not* challenge the establishment and maintenance of separate penal facilities for men and women, nor do they have any standing to do so on *appeals* from convictions for escape. Although a conviction for escape requires a finding of an unauthorized departure from *lawful* detention,[2] we have held consistently that escape from confinement pursuant to a sentence imposed by a court of competent jurisdiction is an escape from lawful detention, even if the original confinement is voidable in a direct proceeding alleging deprivation of constitutional rights. *Eaton v. State*, 302 A.2d 588, 594 (Me.1973); *Chapman v. State*, 250 A.2d 696, 697 (Me.1969). A prisoner may not challenge the lawfulness of his imprisonment by escaping. *State v. Perkins*, 277 A.2d 501 (Me.1971); *Hamner v. State*, 223 A.2d 532 (Me.1966). We are therefore limited to a review of the constitutionality of imposing different sentences for escape from different penal institutions.

 Nothing in the record suggests that imprisonments in the State Prison and in the Women's Correctional Center are so similar that differences in punishment for escape result in denial of equal protection of the law. On the contrary, the statutes establish such differences in the levels of security at the State Prison and at the Women's Correctional Center that it would be surprising if escape from both institutions were punished equally. 34 M.R.S.A. §§ 551–559 specify the rights and duties of the warden and the various officers at the State Prison. § 558 authorizes the "constant keep[ing] on hand" of arms and ammunition and provides justification for the wounding and killing of convicts for the purpose of suppressing an insurrection or preventing an escape. § 591 provides criminal sanctions for any State Prison employee who "suffers, aids or connives" in a prison escape. § 595 provides justification for the wounding or killing of a convict who resists the authority of any officer or refuses to obey his lawful command. In contrast, the only statutory provision relating to the authority of the employees of the Women's Correctional Center is 34 M.R.S.A. § 858, authorizing the superintendent to order an escapee rearrested by an officer of the Center.

We conclude from the statutory scheme that the Legislature intended to provide heavier security for convicts committed to the State Prison than for "prisoners" confined in the Women's Correctional Center. For purposes of prosecutions for escape from the respective institutions, men and women are not similarly circumstanced, and there is therefore no basis upon which to ground an equal protection challenge.

## II

The second and final point of appeal is that "the conduct of the trial Judge denied the appellants their right to a fair and impartial trial."

This contention of error must be viewed in the context of (1) the interrogation of witnesses by the presiding Justice, and (2) gratuitous comments made by the presiding Justice.

2. *State v. Holbrook*, 318 A.2d 62 (Me.1974).

■ The Justice below did interrogate several of the State's witnesses, over objection. Rule 51, M.R.Crim.P.[3] Our preliminary concern is whether the judicial interrogation was error.

In order that the State establish the defendants' guilt it of course became necessary to prove that each defendant escaped from lawful detention in the Maine State Prison. It thus was critical to introduce copies of the legal process by which each appellant was committed to the Prison which, of necessity, involved the testimony of officials from the Prison and from Androscoggin and Cumberland Counties.[4] Through such witnesses, the State sought to introduce certified copies of the criminal process from each county, identification of each appellant with such process, the physical commitment of each appellant, and official records from the Maine State Prison showing the actual receipt therein of each appellant.

The prosecuting attorney, in attempting to introduce such testimony and exhibits, was faced with constant objections, many of which were purely technical and without merit. The presiding Justice, in an obvious effort to bring order out of the resulting confusion, saw fit to ask certain pertinent questions aimed at establishing a foundation for the admissibility of obviously admissible documents and evidence. In other words, the questions asked did not in and of themselves generate any additional evidence.

Unlike the interrogation quoted in *State v. Annis*, 341 A.2d 11, 13 n.1 (1975), where the Justice was examining the defendant and doing so in a prosecutorial manner, the questions here being reviewed were aimed primarily at "clarifying admissibility requirements" of numerous court and prison documents. His questions neither added to nor detracted from the veracity of any witness.

As we said in *State v. Boisvert*, 348 A. 2d 7, 12 (Me.1975):

"Viewed in totality, we see no reasonable likelihood that the cumulative effect of the questions and rulings would suggest to the jury that the Justice had impermissibly aligned himself on the side of the prosecution. *State v. Hunnewell*, 334 A.2d 510 (Me.1975); *State v. Haycock*, 296 A.2d 489 (Me.1972). For contrasting factual backgrounds resulting in a contrary holding, see *State v. Stevens*, 343 A.2d 592 (Me.1975); *State v. Chaplin*, 308 A.2d 873 (Me.1973)."

We find no prejudice to the defendants from this type of interrogation.

We turn now to the comments volunteered by the Justice. Since no objection was registered to any of them, we must determine under Rule 52(b), M.R.Crim.P., if the comments were error and, if so, whether substantial rights of either appellant were affected thereby.[5]

3. "Exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore; but if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

4. Swan had been convicted in Androscoggin County for the crime of robbery and Emery had been convicted in Cumberland County for robbery.

5. There are four such comments:
 a. At the conclusion of the testimony of a State's witness, the Justice said, "You may be excused. Sorry." The defendants now claim that the use of the word "Sorry" implies that the Justice "was apologizing for the State's witness having to appear at all."
 b. When a State's witness was unable to recall a name, the Justice said, "You and I are the same way . . . I know people but I don't know their names."
 c. A State's witness expressed frustration at his inability to answer a question because

Since we must make our determination from a cold record and being unable to determine any intonations or suggested emphasis by the Justice, we are unable to *presume* prejudice. Apparently defense counsel did not seriously consider these comments as prejudicial since no objections were made, in contradistinction to the objections freely registered arising from the interrogation of witnesses by the Justice. Neither defense counsel saw fit to request any corrective instructions.

The first two comments are innocuous. The other comments are capable of several interpretations. They might be construed as facetious comments, or sarcastic references to the quibbling of counsel over the phraseology of the various questions. However, in no instance did the comments suggest any judicial pre-judgment of the defense.[6]

In his charge to the jury the Justice below used the following language:

"I have found it necessary at times to rule upon objections made by counsel and at some times I have found it necessary to clarify certain facts by interrogating the witnesses. I want to say that counsel in this case have done a very commendable job to focus the issues before you. They have a duty. Not only they have a duty and a right, but they have an obligation to object when they feel that improper evidence is being admitted; and if you find that there was an undue amount of objections and all that, this is not to be considered by you in any way to prejudice or affect the rights of the Defendants because these attorneys have their duties to perform. However, in my sustaining the objec-

tions that might have been made or ordering certain testimony stricken from the record, you are not to infer from this that I have any feeling or I am trying to intimate to you that I have an opinion whatsoever of the guilt or innocence of either or both Defendants. I have no opinion."

Viewing these comments conjoined with the above quoted instruction, we are unable to determine that obvious error had been committed which affected any substantial rights of these appellants.

The entry is:

Appeals denied.

DELAHANTY, J., sat at argument but did not participate further in the case.

All Justices concurring.

---

of repeated defense objections. After overruling the objections, the Justice said, "All right. Well, if they will let you answer, you are trying to. Go ahead."

d. At one point the prosecutor requested a recess because he had lost his train of thought. After granting the recess, the Justice added, "I don't blame you the way both these lawyers are picking on you."

6. An analysis of these comments should not be construed as an endorsement of judicial use of facetious or sarcastic language directed at trial counsel, particularly in the presence of a jury. Generally, it serves no useful purpose and we seriously recommend restraint.